**Appeal No.  25-6061**

---

**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

| | |
|---|---|
| JUAN A. DOMINGUEZ,<br><br>        Plaintiff/Appellant,<br><br>v.<br><br>WEISER SECURITY SERVICES, INC.,<br><br>        Defendant/Appellee. | Appeal No.  25-6061<br>CIV-2021-653-SLP<br>(Western District of Oklahoma) |

---

On Appeal from the United States District Court
for the Western District of Oklahoma
District Court Case No. CIV-2021-653-SLP
Honorable Scott L. Palk
U.S. District Judge

---

**APPELLANT'S OPENING BRIEF**

---

**RESPECTFULLY SUBMITTED THIS 2nd DAY OF JULY, 2025.**

s/ Mark Hammons
Mark Hammons, OBA No. 3784
HAMMONS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: assistant@hammonslaw.com

**ORAL ARGUMENT REQUESTED**

## TABLE OF CONTENTS

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i-ii

I. - PRIOR OR RELATED APPEALS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. - STATEMENT OF INTERESTED PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . 1

III. - STATEMENT AS TO JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. - The Basis For The Court's Jurisdiction . . . . . . . . . . . . . . . . . . . . . . 1

    B. - The Dates Showing Timeliness Of The Appeal . . . . . . . . . . . . . . . . . . 1

    C. - The Appeal Is From A Final Order. . . . . . . . . . . . . . . . . . . . . . . . 1

IV. - STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V. - STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

VI. - STATEMENT OF MATERIAL FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . 4

    A. - DOMINGUEZ'S RESPONSE TO WEISER'S SUMMARY
        JUDGMENT STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . 5

    B. - DOMINGUEZ'S STATEMENT OF FACTS AND INFERENCES
        PRECLUDING JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VII. - SUMMARY OF THE ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    A. - THE TRIAL COURT ERRED IN FAILING TO FIND A
        PRIMA FACIE CASE OF RETALIATION. . . . . . . . . . . . . . . . . . . . . 22

    B. - THERE WAS A PROPER CAT'S PAW SHOWING . . . . . . . . . . . . . 23

VIII. - THE STANDARD FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

IX. - ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

    A. - THE TRIAL COURT ERRED IN FAILING TO FIND A
        PRIMA FACIE CASE OF RETALIATION. . . . . . . . . . . . . . . . . . . . . 24

        1. - First Prong–A Protected Report–Was Established . . . . . . . . . . . 24

        2. - The Third Prong of the Prima Facie Was Established . . . . . . . . 25

            a. - knowledge of Dominguez's participating in a
               discrimination investigation against Yates
               was undisputed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

            b. - general knowledge of Dominguez's actions was
               sufficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

c. - the trial court's analysis of the third prima facie prong was erroneous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    *i. - the jury could infer knowledge from the conversations between Yates and Strickland* . . . . . 33

    *ii. - the trial court erroneously drew inferences against the moving party* . . . . . . . . . . . . . . . . . . . 34

    *iii. - error in the failure to consider pretext as evidence of causation* . . . . . . . . . . . . . . . . . . . . . 39

    *iv. - the trial court adopted an erroneous 'actual knowledge' standard* . . . . . . . . . . . . . . . . . . . . . . . 40

CONCLUSION TO PROP A - PRIMA FACIE CASE. . . . . . . . . . . . . . . 43

B. - THERE WAS A PROPER CAT'S PAW SHOWING . . . . . . . . . . . . 43

X. - CONCLUSION AND RELIEF SOUGHT . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

XI. - STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . 44

XII. - CERTIFICATE AS TO THE WORD COUNT OF THE BRIEF . . . . . . . . 44

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

ATTACHMENT 1:    DISTRICT COURT ORDER ON SUMMARY JUDGMENT FILED 08/07/24

ATTACHMENT 2:    DISTRICT COURT JUDGMENT FILED 08/07/24

ATTACHMENT 3:    DISTRICT COURT ORDER ON MOTION TO ALTER OR AMEND THE JUDGMENT FILED 04/23/25

## TABLE OF AUTHORITIES

**UNITED STATES SUPREME COURT**

*Heffernan v. City of Paterson*, 578 U.S. __, ___, 136 S. Ct. 1412 (2016) . . . . . . 41

*Herbert v. Lando*, 441 U.S. 153 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Nichols v. United States*, 543 U.S. 1113 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Schulz v. Pennsylvania R.R. Co.*, 350 U.S. 523 (1956) . . . . . . . . . . . . . . . . . . . . 36

*Staub v. Proctor Hosp.*, 562 U.S. 411 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 43

*Smith v. United States*, 568 U.S. 106 (2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**UNITED STATES COURTS OF APPEAL**

*Anderson v. Phillips Petroleum Co.*, 861 F.2d 631 (10th Cir.1988) . . . . . . . . . . . 29

*Bertsch v. Overstock.com*, 684 F.3d 1023 (10th Cir. 2012) . . . . . . . . . . . . . . . . . 40

*Dixon v. Okla. ex rel. Reg'l Univ. Sys. of the OK Bd. of Regents*,
125 F.4th 1321 (10th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*EagleMed LLC v. Cox*, 868 F.3d 893 (10th Cir.2017). . . . . . . . . . . . . . . . . . . . . . 39

*Gordon v. New York Bd of Educ.*, 232 F.3d 111 (2nd Cir. 2000) . . . . . . . . . . . . . 30

*Harrington v. Aggregate Indus.-Northeast Region, Inc.*,
668 F.3d 25　(1st Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Jones v. Bernanke*, 384 U.S. App. D.C. 443, 452, 557 F.3d 670 (2009). . . . 30, 31

*Kramer v. Wasatch County Sheriff's Office*,
743 F.3d 726 (10th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Lake Hefner Open Space Alliance v. Dole*,
871 F.2d 943 (10th Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Maldonado v. City of Altus*, 433 F.3d 1294 (10th Cir. 2006) . . . . . . . . . . . . . . . . 23

*Mauldin v. Driscoll*, 136 F.4th 984 (10th Cir. 2025) . . . . . . . . . . . . . . . . . . . . 24, 32

*Nealis v. CoxCom, LLC*, 731 F. App'x 787 (10th Cir. 2018) . . . . . . . . . . . . . . . . 39

*Orr v. City of Albuquerque*, 417 F.3d 1144 (10th Cir. 2005) . . . . . . . . . . . . . 31, 32

i

*O'Toole v. Northrop Gruman Corp.,*
305 F.3d 1222 (10th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

*Pelt v. Utah*, 539 F.3d 1271 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Reich v. Hoy Shoe Co.*, 32 F.3d 361 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . 41

*Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . 42

*Singh v. Cordle*, 936 F.3d 1022 (10th Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . 31

*Sorensen v. AMTRAK,* 786 F. App'x 652 (9th Cir. 2019). . . . . . . . . . . . . . . . . 36

*United States v. Lopez,* 131 F.4th 1114 (10th Cir. 2025). . . . . . . . . . . . . . . . . . . 43

*United States v. Nichols*, 374 F.3d 959 (10th Cir. 2004). . . . . . . . . . . . . . . . . . . 42

*United States v. Tierney,* 760 F.2d 382 (1st Cir.1985). . . . . . . . . . . . . . . . . . . . . 41

### UNITED STATES DISTRICT COURTS

*Enstrom v. Beech Aircraft Corp.*, 712 F.Supp. 841 (D.Kan.1989) . . . . . . . . . . . . 29

### FEDERAL STATUTES

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 2000e-5(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## I. - PRIOR OR RELATED APPEALS

There are no prior or related appeals.

## II. - STATEMENT OF INTERESTED PARTIES

There are no undisclosed or unlisted parties to this appeal.  The Appellant (Plaintiff below) is Juan Dominguez.  The Appellee (Defendant below) is Weiser Security Services, Inc.

## III. - STATEMENT AS TO JURISDICTION

### A. - The Basis For The Court's Jurisdiction

Mr. Dominguez's claims arise out of violations of Title VII for reporting and opposing gender discrimination and sexual harassment.  Jurisdiction over those claims is vested pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331.

### B. - The Dates Showing Timeliness Of The Appeal

The trial court's order granting  summary judgment on Mr. Dominguez's case was entered on August 7, 2024, with judgment being entered on the same date of August 7, 2024. Appx 466-492 (Order), Appx 493 (Judgment). Mr. Dominguez filed a Rule 59 motion to alter or amend the Order and Judgment on August 23, 2025. Appx 494-499.  The trial court denied Mr. Dominguez's motion on or about April 23, 2025.  Appx 514-519.

The notice of appeal was filed on April 25, 2025, which is within the thirty (30) day period following disposition of the Rule 59 motion and which is within the time allowed for filing an appeal. Appx 520-521.

### C. - The Appeal Is From A Final Order

The Order granting summary judgment and the judgment, Appx 466-492 (Order), Appx 493 (Judgment), disposed of all issues and were final under 28 U.S.C.

§ 1291. The finality of the Order was stayed by Mr. Dominguez's timely Fed.R.Civ.P 59 motion, Appx 494-499, the Order and Judgment became appealable on April 23, 2025, with the denial of the Fed.R.Civ.P. 59 motion.  Appx 520-521.

## IV. - STATEMENT OF THE ISSUES

For his arguments and statement of the issues in this case, Mr. Dominguez shows this Court as follows:

1.  The trial court erred in finding that Mr. Dominguez had not established a prima facie case of retaliation pursuant to the *McDonnell Douglas* formulation and, thereupon, dismissing his lawsuit.

    a.  knowledge of Dominguez's participating in a discrimination investigation against Yates was undisputed

    b.  general knowledge of Dominguez's actions was sufficient

    c.  the trial court's analysis of the third prima facie prong was erroneous

2.  The trial court erred in its application of the cat's paw doctrine under *Staub v. Proctor Hosp.*, 562 U.S. 411 (2011) by failing to find that if Mr. Yarborough was not the actual decisionmaker, he nonetheless caused the termination of Mr. Dominguez.

## V. - STATEMENT OF THE CASE

The Plaintiff below and Appellant here, Juan Dominguez, had worked as a security guard since 2010 under the previous company which provided security services for Halliburton.  When Weiser took over the security operations, Weiser retained Mr. Dominguez with the title of Lieutenant over the day shift.  Throughout this time period, except when Mr. Yates was out on leave, the Site Supervisor and

-2-

Dominguez's immediate supervisor was Joesph Yates.

Mr. Dominguez had an excellent work history. Prior to his termination, Mr. Dominguez had never been disciplined, and Dominguez was made the Acting Supervisor when Yates was out for a protracted period in 2020. In February 2020, Dominguez received an award as Security Officer of the Month– the first and only time that award had been given. While Yates was out on leave, Dominguez was assigned personnel management duties because guards were complaining about Yates showing favoritism to young, female employees.

In April 2020, an officer named Robert Culberson began raising race discrimination issues. Ultimately, that race discrimination complaint caused Weiser to open an investigation into Yates' conduct. At least some of these complaints were forwarded to Mike Strickland, the branch manager and Yates' immediate supervisor. Yates was aware complaints had been made against him and believed Dominguez was responsible for these complaints, and in particular the complaints of sexual favoritism. Yates threatened Dominguez and said if Dominguez did not align himself with Yates, Dominguez would lose his job. On June 10, 2020, Dominguez was interviewed as part of the investigation into Yates. As part of that interview, Dominguez reported that Yates favored younger, female employees.

The evening of June 10, 2020, after Dominguez's interview, Yates called Dominguez, yelling at him. Yates demanded that Dominguez retrain his guards on how to perform COVID temperature checks. Dominguez carried out that instruction; however, Yates attempted to interfere with the training efforts so that Yates could claim Dominguez was not performing this task.

Yates also falsely claimed he had instructed Dominguez to be present on

Saturday, June 13, 2020 (normally Dominguez's day off) for a training exercise. Dominguez was never told to be present for that training, and when Dominguez did not show up, Yates told his supervisor that Dominguez had disobeyed that instruction. Tellingly, Yates claimed he had also instructed another officer, Justin Chasteen, to appear at that same date, time, and place for the same training. Chasteen also did not appear and testified he also was not ordered to be present.

Defendant claims Mr. Strickland was the decisionmaker for the termination of Dominguez; however, the termination document was signed by Yates. Defendant admits the termination was based on complaints Yates made, with the decisive complaint being the alleged failure of Dominguez to appear for the June 13, 2020 Saturday training. Mr. Chasteen, who was allegedly guilty of the same offense, was not fired or even disciplined. Assuming Strickland was the decisionmaker, his decision to fire Mr. Dominguez was based solely on Mr. Yates' complaints. Strickland did not talk to Dominguez about those complaints or secure Mr. Dominguez's version of the facts. The firing was, at the least, orchestrated by Yates in retaliation for Dominguez's report of gender discrimination. Mr. Dominguez brought suit after exhausting his administrative requirements with the EEOC.

After the suit was filed, the trial court granted Defendant's motion for summary judgment, finding Mr. Dominguez had failed to establish a prima facie case of retaliation. Mr. Dominguez filed a Fed.R.Civ.P. 59 motion to reverse that decision, which the trial court denied. Thereupon, Mr. Dominguez timely appealed the Orders and Judgment.

## VI. - STATEMENT OF MATERIAL FACTS

Since the issues on appeal were decided pursuant to a summary judgment, the

-4-

material facts are those set out by Mr. Domguez in response to Weiser's motion for summary judgment. Those facts are found at Appx 174-188. In finding against Mr. Dominguez, the primary basis for the trial court's Order and Judgment was the alleged failure to establish the third prong of the *McDonnell Douglas* formulation– causation. The basis for this claimed failure was the finding of the trial court that the decisionmakers for Weiser did not know of Dominguez's protected reports. See Appx 483-485, Order (8/07/24), p. 18-20. The trial court also found that Mr. Dominguez had not established Yates' knowledge of Dominguez's conduct and therefore did not establish the cat's paw doctrine of liability. Appx 487-492, Order (8/07/24), p. 22-27.

The trial court, relying on the alleged failure of the prima facie case, did not examine the evidence of pretext. Appx 492 fn 26, Order (8/07/24), p. 27, fn 26.

Because the only issues presented on the appeal are the sufficiency of the prima facie case under *McDonnell Douglas* and the application of the cat's paw doctrine, portions of the record unrelated to those issues are omitted.

The facts which should have precluded summary judgment are set out hereafter:

### A. - DOMINGUEZ'S RESPONSE TO WEISER'S SUMMARY JUDGMENT STATEMENT OF FACTS

References are to the facts as described in Mr. Dominguez's response to Weiser's summary judgment motion. References to Dominguez's objections to certain of Weiser's facts and evidence is omitted as no longer being at-issue.

RDF1-8:    Omitted as not pertinent to the appellate issues.

RDF9:    Admitted that Plaintiff made an initial report of gender discrimination

-5-

by Yates to Strickland, Ford, and Bullock while Yates was on leave. Ex 1 Dominguez, p. 45, ln 14 to p. 47, ln 9. Appx 174 (Ex 1 at 215-217).

RDF10: Admitted that because of Yates' reported favoritism towards women, Plaintiff was initially given responsibility for personnel matters. Ex 1 Dominguez, p. 84, ln 5-24; p. 170, ln 6-13. Appx 174 (Ex 1 at Appx 229, 269).

RDF11: Admitted that Plaintiff was given the first and only "Officer of the Month" award at Weiser in February 2020. Ex 1 Dominguez, p. 97, ln 24 to p. 98, ln 17 & Ex 9 (Certificate). Appx 175 (Ex 1 at Appx 230-231; Ex 9 at Appx 355).

RDF12-13: Denied. At the relevant time, Yates was responsible for payroll. Ex 1 Dominguez, p. 124, ln 19 to p. 125, ln 21; p. 187, ln 17 to p. 188, ln 2. This is indicated by the text of March 20, 2020 where Yates asks Dominguez to perform this duty for him, and Dominguez complies. Ex 10 (Text March 30-April 1). Appx 356-357.

RDF14-16: . . . Plaintiff wore a mask when instructed. Ex 1 Dominguez, p. 111, ln 16-25; p, 119, ln 1 to p. 120, ln 1; p. 159, ln 9-14; p. 185, ln 5 to p. 186, ln 1. The mask mandate for Weiser/Halliburton was not announced until June 8 and not circulated until June 9– five days after the purported note. Ex 11. Appx 175 (Ex 1 at Appx 232, 237-238, 265, 274-275; Ex 11 at Appx 357-358).

RDF17-21: . . . Defendant materially misstates the events in question. Dominguez's wife advised him that her parents were tested for COVID; however, neither she nor he had been around them. He decided to get a test

-6-

because someone at work had tested positive.  Ex 1 Dominguez, p. 114, ln 18 to p. 117, ln 10.  At the time of this incident, there was no protocol in effect for reporting COVID-19 exposure nor engaging in quarantine or other practices. Ex 4 Culberson Aff p. 1-2, ¶¶ 4-6. (Appx 313-314) Although not circulated at the Duncan facility, a protocol produced in discovery in April 2022 shows that no action was required absent COVID symptoms or a positive test– neither of which were present.  Ex 12.  Appx 175 (Ex 1 at Appx 233-236; Ex 12 at Appx 359-361).

RDF22-24:  . . . Admitted that temperature checks were being implemented effective June 15 and that Dominguez and other Lieutenants were responsible for training.  It was Yates who trained Dominguez and Chasteen about how their staff was supposed to perform temperature checks.  Ex 1 Dominguez, p. 126, ln 7-12; p. 128, ln 17 to p. 129, ln 25; p. 133, ln 25 to p. 134, ln 16.  Appx 175-176 (Ex 1 at Appx 241, 243-244, 248-249).

RDF25:  Not disputed, however, this [Weiser Ex 11] shows that the training materials were not available at the time the training commenced on June 8.  Appx 176. [Weiser 11 begins at Appx 119]

RDF26:  . . . Yates was attempting to fabricate a complaint about Dominguez's training by interrupting his training sessions with Williams and Miranda and then falsely saying Dominguez had not trained them.  Ex 1 Dominguez, p. 130, ln 11 to p. 131, ln 9; p. 188, ln 23 to p. 189, ln 24.  Appx 176 (Ex 1 at Appx 245-246, 277-278).  Yates never told Dominguez that anyone had not been properly trained, nor did he identify any such persons.  Ex 1, p. 135, ln 18-23; p. 189, ln 21-24.

Appx 176 (Ex 1 at Appx 250, 278).

RDF27:      Admitted with the addition that this email was directed to all supervisors.

RDF28:      Admitted with the addition the Plaintiff fully complied with this directive. Significantly, this email said nothing about appearing on Saturday, June 13. Ex 13. Appx 176 (Ex 13 at Appx 362).

RDF29:      Admitted that Yates called Plaintiff upset the evening after Plaintiff's interview and report of gender discrimination against Yates. Ex 1 Dominguez, p. 27, ln 6-15. Appx 176 (Ex 1 at Appx 212). There was no reason for Yates to be angry other than Dominguez being interviewed about Yates. Ex 1, p. 203, ln 8 to p. 204, ln 4. Appx 176 (Ex 1 at Appx 286-287).

RDF30-31    . . . Dominguez does admit he and Chasteen were called in to do further training of their guards. Appx 176 (Ex 14 at Appx 146-147).

RDF32-33:   [Omitted as not pertinent to the Appellate issues].

RDF34:      Admitted as to the email, however, denied that Yates' statements were truthful. Yates never went over any list of persons who were allegedly not trained. Ex 1, Dominguez p. 135, ln 18-23; p. 189, ln 21-24. Appx 177 (Ex 1 at Appx 250, 278). Further, Yates was attempting to fabricate a claim, in that Yates had interrupted the training with Williams and Miranda. Ex 1, p. 130, ln 11 to p. 131, ln 9; p. 188, ln 23 to p. 189, ln 24; Ex 6 Williams, p. 12, ln 3 to p. 20, ln 5. Appx 177 (Ex 1 at Appx 245-246, 277-278; Ex 6 at Appx 330-338). Notably, this email says nothing about requiring Dominguez or Chasteen to appear at a June 13 training. Def Ex 16. Appx 177 (Ex 16 at Appx 149-150).

RDF35-39: . . .Admitted that Strickland and Yates were present on June 13, 2020, but denied that either Plaintiff or Mr. Chasteen were told to be present on that day.  Ex 1 Dominguez, p. 143, ln 23 to p. 144, ln 16;  p. 164, ln 11-12; p. 190, ln 4-13; Ex 5 Chasteen, p. 7, ln 17 to p. 8, ln 10. Appx 177-178 (Ex 1 at Appx 256-257, 268, 279; Ex 5 at Appx 319-320). June 13, a Saturday, was not a scheduled work day for Plaintiff and he would not have been present unless instructed.  Ex 1 Dominguez, p. 190, ln 4-13. Appx 177-178 (Ex 1 at Appx 279). Defendant has produced no document showing such an instruction.  There is an email dated June 10 reminding about a Monday, June 15 meeting.  Ex 14. (Ex 14 at Appx 363).  Indeed, Yates texted both Plaintiff and Chasteen on June 13 during the time the training was supposedly going on, but the text was a reminder to appear on the following Monday.  Ex 15 (text of June 13). (Ex 15 at Appx 364). Nothing was said about any training or attendance on the 13th, nor was there even any mention of them missing that meeting at any time prior to Dominguez's termination.  Ex 1, p. 190, ln18 to p. 192, ln 14. (Ex 1 at Appx 279-281). It was Yates' practice to mention or remind employees to attend such meetings and to immediately say something if an assignment was missed.  Ex 1, p. 192, ln 15 to p. 194, ln 1.  Appx 177-178 (Ex 1 at Appx 281-283).

RDF40 to 41-42:   Omitted as not pertinent to the issues on appeal.

RDF43-44: Dominguez has previously reported Yates' gender discrimination to Mike Strickland, Chip Ford, and Robert Bullock.  Dominguez Ex 1, p. 45, ln 14 to p. 47, ln 9; p. 150, ln 17-24; p. 75, ln 9-25; p. 78, ln 8 to p.

80, ln 2; p. 82, ln 6 to p. 83, ln 15. Appx 178 (Ex 1 at Appx 215-217, 260, 223, 224-226). See also PF 4. Dominguez repeated this during his interview with Ms. Sutherlin, but discussed this in greater length than she recorded. Ex 1 Dominguez, p. 149, ln 23-25; p, 150, ln 14-23; p. 151, ln 3-14. Appx 178 (Ex 1 at Appx 259, 260, 261).

RDF45:　Admitted in part, but Mr. Culberson also reported favoritism towards women as part of his interview. Ex 3 Sutherlin, p. 71, ln 15 to p. 72, ln 13. Appx 179 (Ex 3 at Appx 305-306).

RDF46:　Admitted that during the eight (8) days between his interview and his termination, Defendant did not follow up on his reports. Appx 179.

RDF47:　Admitted in part, however, Dominguez had already told Strickland, Ford, and Bullock of such discrimination. Dominguez Ex 1, p. 45, ln 14 to p. 47, ln 9; p. 150, ln 17-24; p. 75, ln 9-25; p. 78, ln 8 to p. 80, ln 2; p. 82, ln 6 to p. 83, ln 15. Appx 179 (Ex 1 at Appx 215-217, 260, 223, 224-226, 227-228). Furthermore, Yates stated that he knew about the investigation and made statements indicating he knew one subject of the investigation was his gender bias. He also indicated that he blamed Dominguez for the investigation. Ex 1 Dominguez, p. 181, ln 22 to p. 182, ln 17; p. 161, ln 17 to p. 162, ln 8; p. 198, ln 25 to p. 199, ln 19; Ex 3 Sutherlin, p. 79, ln 11-18. Appx 179 (Ex 1 at Appx 270-271, 266-267, 284-285; Ex 3 at Appx 311).

RDF48-49:　. . . It is clear that Strickland, Ford, and Dominguez were aware of the investigation into Yates. Ex 3 Sutherlin, p. 25, ln 16 to p. 26, ln 9; Ex 16; Ex 17; Ex 18. Appx 179 (Ex 3 at Appx 394-395; Ex 16 at Appx

-10-

365; Ex 17 at Appx 366; Ex 18 at Appx 367).

RDF50-51: Denied. . . Dominguez denies the allegations in this paragraph and points out that he was never disciplined prior to his termination, he denies any communications about these supposed issues, and there is no documentary support that Dominguez was ever verbally admonished or counseled about any of these issues. Ex 1 Dominguez, p. 71, ln 10-12. Appx 179-180 (Ex 1 at Appx 222). Strickland did not have a good faith belief about these matters since he had not talked to Dominguez or Chasteen about them before deciding to fire him. Ex 8 Strickland, p. 29, ln 6 to p. 30, ln 7; p. 60, ln 4-14; p. 59, ln 2-8. As to specific items: Appx 179-180 (Ex 8 at Appx 349-350, 353, 352).

**Failure to appear on June 13**: Strickland could not have a good faith belief that Plaintiff failed to appear on June 13 because he had no personal knowledge of the instruction and did not investigate the matter. Strickland never spoke with Dominguez or Chasteen (who also was supposedly required to appear) about their non-appearance, nor did he give them the opportunity to show the June 13 text (Ex 15) from Yates which refuted any need for either of them to come in on that day. Neither Dominguez nor Chasteen were told to be present on the 13th. Ex 1, Dominguez p. 143, ln 23 to p. 145, ln 13; Ex 13 (text); Ex 5 Chasteen, p. 7, ln 17 to p. 8, ln 10. See also RDF 35-39, PF 18. Appx 180 (Ex 1 at Appx 265-258; Ex 13 at Appx 362; Ex 5 at Appx 319-320).

**Failure to train**: Strickland did not have a good faith belief that Dominguez and Chasteen improperly trained employees, because he did

-11-

not investigate the matter. Strickland knew that Yates trained both Dominguez and Chasteen, but Strickland did not interview Dominguez or Chasteen about what they were trained to do. Strickland learned that Domiguez said he trained his subordinates in the same manner Yates trained him, but he did not interview Chasteen. Nor could Strickland identify anyone who was supposedly not trained. Ex 1 Dominguez, p. 157, ln 1-12. Dominguez trained his subordinates the same way Yates trained him. Ex 1, p. 134, ln 2 to p. 135, ln 5; p. 139, ln 23 to p. 140, ln 12; p, 141, ln 22 to p. 142, ln 23; p. 127, ln 2-5; p. 129, ln 3-25; p. 132, ln 3-7; p. 133, ln 10-14. Appx 180-181 (Ex 1 at Appx 249-250, 252-253, 254-255, 242, 244, 247, 248). It is significant that Yates tried to manufacture a training issue by complaining (after the fact) about the training of Ledbetter, whom Yates himself had trained. Ex 1, p. 138, ln 18 to p. 139, ln 14; p. 129, ln 3-20. Appx 180-181 (Ex 1 at Appx 251-252, 244). Yates also misrepresented the training of Ted Williams and Ms. Miranda to Mr. Strickland. Yates had interrupted that training and then, after he had sent Dominguez on task, tried to claim that Dominguez had not trained them, even though Dominguez came back and fully trained them. Ex 19; Ex 1, p. 188, ln 20 to p. 189, ln 20; p. 130, ln 11 to p. 131, ln 9. Ex 6 Williams, p. 12, ln 3 to p. 20, ln 5. Appx 180-181 (Ex 19 at Appx 368; Ex 1 at Appx 277-278, 245-246; Ex 6 at Appx 330-338).

**Disparate treatment of Chasteen**: A jury could conclude that Strickland lacked a good faith belief that Dominguez had refused to

appear or failed to train because Chasteen was accused of the same failures and supposedly was set to be terminated for them, but he was not even disciplined. Ex 5 Chasteen, p. 12, ln 22 to p. 13, ln 13; p. 7, ln 17 to p. 8, ln 14; p. 16, ln 22 to p. 17, ln 24. Appx 181 (Ex 5 at Appx 322-323, 319-320, 326-327). Chasteen was merely asked why he was not there. He was not fired for not attending or for failing to train. Ex 5, p. 8, ln 23 to p. 9, ln 15. Yates thought Chasteen was on his side. Ex 3 Sutherlin, p. 35, ln 1 to p. 37, ln 1. Appx 181 (Ex 5 at Appx 320-321; Ex 3 at Appx 299-301).

**Failure to wear a mask**: Strickland lacked a good faith belief that Dominguez had refused to wear a mask because, again, he had no personal knowledge and never talked to Dominguez about this. The mask mandate was only issued to leadership on June 8 and circulated to Dominguez and other lieutenants on June 9 after Dominguez was supposedly not wearing a mask. Ex 11. Dominguez denies refusing to wear a mask or being told he had acted inappropriately. Ex 1 Dominguez, p. 111, ln 16-25; p, 119, ln 1 to p. 120, ln 1; p. 159, ln 9-14; p. 185, ln 5 to p. 186, ln 1; Ex 2 Aff Dominguez, p. 2, ¶¶7, 10; Ex 4 Aff Culberson, p. 1, ¶¶ 2, 3. Appx 181 (Ex 1 at Appx 232, 237-238, 265, 274-275; Ex 2 at Appx 290; Ex 4 at Appx 313).

**Not following COVID protocols**: At least at Halliburton, there were no COVID protocols in place during Dominguez's period of employment. Ex 2, Aff Dominguez, p. 2-3, ¶¶ 8, 11; Ex 4 Aff Culberson, p. 1-2, ¶¶ 4-6. Appx 181-82 (Ex 2 at Appx 290-91; Ex 4 at Appx 313-14). After

the depositions of Sutherlin and Strickland, Defendant has produced a COVID protocol, Ex 20, but Dominguez did not violate any part of that protocol. Ex 20 (at Bates Weiser 306, under "Testing, Isolating and Contact Tracing." Appx 181-82 (Ex 20 at Appx 369-71).

**Failure to assist with payroll**: Strickland did not have either personal knowledge nor a good faith belief that Dominguez refused to perform payroll because Strickland did not ever talk to Dominguez about this, and the payroll duties had been taken from Dominguez. Ex 1 Dominguez, p. 124, ln 19 to p. 125, ln 21; p. 187, ln 17 to p. 188, ln 2. Appx 182 (Ex 1 at Appx 239-40, 276-77). This is indicated by the text of March 20, 2020 where Yates asks Dominguez to perform this duty for him, and Dominguez complies. Ex 2 Aff Dominguez, p. 3, ¶ 12, Ex 24. Appx 182 (Ex 2 at Appx 291; Ex 24 at Appx 375).

**Sending Yates' girlfriend home**: Strickland lacked a good faith belief about Dominguez improperly sending a female guard (reportedly Yates' girlfriend) home, in that he had no personal knowledge of the matter and never talked to Dominguez. Had Strickland talked to Dominguez, he would have learned that the employee was sent home because of habitual tardiness and that this was done at the instruction of Chip Ford. Ex 1 Dominguez, p. 64, ln 19 to p. 65, ln 9; p. 48, ln 5-25; Ex 2 Dominguez Aff, p. 2, ¶ 6, Ex 4 Culberson Aff, p. 2, ¶ 11. Appx 182 (Ex 1 at Appx 220-21, 218; Ex 2 at Appx 290; Ex 4 at App 314).

RDF52-53: It is denied that Strickland held any good faith belief that Dominguez either disregarded safety rules or was grossly inattentive to his duty,

given that he never spoke to Dominguez about any of these issues and did not adequately investigate them.  See facts in RDF30, above. Further, Chasteen, who was also accused of not showing up on June 13 and properly training his guards, was not disciplined.  Ex 5, Chasteen, p. 7, ln 17 to p. 8, ln 14.  Appx 182 (Ex 5 at Appx 319-20).

RDF54-55:  Omitted.

## B. - DOMINGUEZ'S STATEMENT OF FACTS AND INFERENCES PRECLUDING JUDGMENT

PF1:  A jury could find that Yates was the real decision-maker for firing Dominguez. Appx 183.

(A)  Yates knew at least by June 4 that he was being investigated for gender discrimination and he attributed the investigation to Dominguez. Ex. 3 Sutherlin, p. 34, ln 1 to p. 36, ln 6.  Appx 183 (Ex 3 at Appx 298-300).

(B)  About two weeks prior to terminating Dominguez, Yates said that management was always going to have his back.  Yates also said: "I know you complained about me to Robert and Mike, and we better get aligned. . . or it was going to be my job on the line or his [Yates'] job on the line."  Ex 1 Dominguez, p. 161, ln 17 to p. 162, ln 8; p. 198, ln 25 to p. 199, ln 19. Appx 183 (Ex 3 at Appx 266-67, 284-85).

(C)  After June 4, Yates started writing records of complaints about Dominguez which were not shown. Yates admitted to creating documents about Dominguez, without showing them to Dominguez, which was contrary to personnel practices. Ex 3 Sutherlin, p. 34, ln 1 to p. 36, ln 6. Defendant Exhibit  8 (Yates Notes 6/5/20), Defendant

-15-

Exhibit 14 (Yates Notes 6/8/20), Defendant Exhibit 18 (Yates notes)). Appx 183 (Ex 3 at Appx 298-300; Def Ex 8 at Appx 109-12; Def Ex 14 at Appx 146-47; Def Ex 18 at Appx 154-64).

(D)   During his interview with HR on June 11, Yates focused his complaints on Dominguez. Ex 3 Sutherlin, p. 77, ln 18 to p. 79, ln 17. Yates said he didn't think Dominguez liked him and Yates said he "believed that is where a bulk of the issues were coming from." Ex 3 Sutherlin, p. 79, ln 11-18. Appx 183-84 (Ex 3 at Appx 309-11, 311).

(E)   During the HR interview on June 11, Robert Culberson revealed that Yates had said that Dominguez would be the next man out. Ex 3 Sutherlin, p. 48, ln 19 to p. 49, ln 15. Appx 184 (Ex 3 at Appx 292-303).

(F)   On June 12, Yates made a false report to Strickland that Dominguez had not trained two guards (Ted Williams, Magalee Miranda) (something he did not tell Dominguez.) Ex 19, Appx 368. Both Dominguez and Williams state this was not true and that Yates was fabricating a complaint. While Dominguez was training those individuals, Yates interrupted the training and sent Dominguez on an assignment. Then Yates came in "asking" if Dominguez had finished that training. Yates gave cursory training while Dominguez was gone but both Williams and Miranda told Yates that Dominguez was coming back to finish the training. Dominguez did, in fact, come back and trained them more fully than Yates. Ex 1, Dominguez, p. 188, ln 20 to p. 189, ln 20; p. 130, ln 11 to p. 131, ln 9. Ex 6 Williams, p. 12, ln 3 to p. 20, ln 5. Appx

-16-

184 (Ex 1 at Appx 277-78, 245-46; Ex 6 at Appx 330-38).

(G)   On June 13, 2020, Yates lied to Strickland and claimed that Dominguez and Chasteen were told to come for a training exercise that date, which was false as neither Dominguez nor Chasteen was told to be present on the 13th.  Ex 1, Dominguez p. 143, ln 23 to p. 145, ln 13; Ex 5 Chasteen, p. 7, ln 17 to p. 8, ln 10. Appx 184-85 (Ex 1 at Appx 256-58; Ex 5 at Appx 319-20). June 13, a Saturday, was not a scheduled work day for Plaintiff and he would not have been present unless instructed.  Ex 1 Dominguez, p. 190, ln 4-13. Defendant has produced no document showing such an instruction.  There is an email dated June 10 reminding about a Monday, June 15 meeting.  Ex 14. Indeed, Yates texted both Plaintiff and Chasteen on June 13 during the time the training was supposedly going on, but the text was a reminder to appear on the following Monday.  Ex 15 (text of June 13).  Nothing was said about any training or attendance on the 13th, nor was there even any mention of them missing that meeting at any time prior to Dominguez's termination.  Ex 1, p. 190, ln18 to p. 192, ln 14.  It was Yates' practice to mention or remind employees to attend such meetings and to immediately say something if an assignment was missed.  Ex 1, p. 192, ln 15 to p. 194, ln 1. Appx 184-85 (Ex 1 at Appx 279-81, 281-83).

(H)   Based on the false complaints of Yates, Strickland made a decision to fire Dominguez on June 16, without even talking to Dominguez.   Ex 8 Strickland, p. 60, ln 4-14. Dominguez denies that Strickland had any conversations with him about supposed performance issues.  Ex 2 Aff

Dominguez, p. 1, ¶¶ 2-4. Appx 185 (Ex 8 at Appx 353; Ex 2 at Appx 289).

(I)  On June 18, 2020, Yates sent an email to Strickland again repeating the false claim that two guards (presumably Williams and Miranda) had not been trained. Ex 21. See Par (F), above. Appx 185 (Ex 21 at Appx 372).

(J)  On June 19, 2020, Yates called Dominguez into a meeting and Strickland fired him. Ex 1 Dominguez, p. 156, ln 4-11. The only two issues raised were the false claims by Yates that Dominguez had not trained his guards and did not show up on June 13. Ex 8 Strickland, p. 28, ln 2-8; Ex 1 Dominguez p. 156, ln 23 to p. 158, ln 12. These are the only matters mentioned in the termination form. Ex 22 (termination form signed by Yates). Appx 185 (Ex 1 at Appx 262; Ex 8 at Appx 348; Ex 1 at Appx 262-64; Ex 22 at Appx 373).

(K)  Strickland stated at one point the false claim of failing to appear on June 13, 2020 was the straw that broke the camel's back and caused Dominguez to be fired. Ex 8 Strickland, p. 37, ln 16-22. Appx 185 (Ex 8 at Appx 351).

(L)  Even after the termination, Yates continued to send information about Dominguez to Strickland. Ex 23 (June 23 email). Appx 186 (Ex 23 at Appx 374).

(M)  Yates apparently made the decision to not fire or discipline Chasteen who was accused of the same performance issues as Dominguez. Ex 5 Chasteen, p. 12, ln 22 to p. 13, ln 13; p. 7, ln 17 to p. 9, ln 15; p. 16, ln

-18-

22 to p. 17, ln 24. Appx 185 (Ex 5 at Appx 322-23, 321, 326-27).

PF2: Chip Ford did not control the termination. There is no admissible evidence regarding Chip Ford's involvement; however, Defendant has suggested that Mr. Ford requested Dominguez be fired and Chasteen at least be demoted. DF39. The only admissible communication from Ford states that personnel issues are up to Weiser. Ex 17 (email). To Dominguez's observations, Yates could usually control terminations. Ex 1 Dominguez, p. 65, ln 15-24. Yates did not carry out Ford's claimed desire to at least demote Chasteen, and did not even discipline him. See PF1(L) above. Appx 186 (Ex 17 at Appx 366; Ex 1 at Appx 221).

PF3: Dominguez had been a security officer at the Halliburton facility since 2010 working first for Securitas, then Covenant, then Ally Security, and finally Weiser. Ex 1 Dominguez, p. 15, ln 6-14. Dominguez had been a security supervisor (Lieutenant) for the last seven years of his employment. Ex 1, p. 27, ln 23-25. Appx 186 (Ex 1 at Appx 205, 212).

PF4: At all times Dominguez was employed, including under the prior security company, Joesph Yates was the site manager at Halliburton and Mr. Dominguez's supervisor for ten years. Ex 1 Dominguez, p. 43, ln 14-16; p. 193, ln 3-5. Mike Strickland was Yates' immediate supervisor. Ex 1, p. 44, ln 17-19; Ex 8 Strickland, p. 10, ln 5-14. Appx 186 (Ex 1 at Appx 213, 282, 214; Ex 8 at Appx 347).

PF5: Prior to his termination, Dominguez had never been disciplined. Ex 1 Dominguez, p. 71, ln 10-12. Appx 186-87 (Ex 1 at Appx 222). To the contrary, from fall 2019 to February 2020, when Yates was out for extended FMLA

-19-

leave, Mr. Dominguez was selected to be the Acting Site manager. Ex 5 Chasteen, p. 6, ln 4-19; Ex 1 Dominguez, p. 47, ln 4-11. In February 2020, Dominguez received the first and only security officer of the month award. Ex 1, p. 97, ln 24 to p. 98, ln 17 & Ex 9 (certificate). Appx 186-87 (Ex 5 at Appx 318; Ex 1 at Appx 217, 230-3; Ex 9 at Appx 355).

PF6: During this time period (prior to his award) Dominguez conveyed complaints to Weiser (Mike Strickland, Robert Bullock, and Chip Ford) about Yates favoring young women. Ex 1, p. 45, ln 14 to p. 47, ln 9; p. 150, ln 17-24; p. 75, ln 9-25; p. 78, ln 8 to p. 80, ln 2; p. 82, ln 6 to p. 83, ln 15. Appx 187 (Ex 1 at Appx 215-17, 260, 223, 224-26, 227-28). Nonetheless, Chip Ford warned Dominguez not to make a complaint of gender discrimination: "[H]e told me that whenever I talked to Mike and [Robert], don't generalize females. He told me to generalize officers, they are just certain officers." Ex 1, p. 82, ln 6-13; p. 83, ln 3-23. Appx 187 (Ex 1 at Appx 227, 228). Dominguez knew that this was to try to make it seem like the discrimination was not gender based. Ex 1, p. 181, ln 6-18. Appx 187 (Ex 1 at Appx 270). Later, Yates stated that Robert Bullock had talked to him "and it didn't matter what happened, that [Yates] was still going to be the site security manager." Ex 1, p. 15-21. Appx 187 (Ex 1 at Appx 205-11).

PF7: Because of those complaints, Dominguez was assigned responsibility for personnel issues. Ex 1, p. 84, ln 5-24; p. 170, ln 6-13. Appx 187 (Ex 1 at Appx 229, 269).

PF8: While Yates was still on leave, Dominguez, acting at the instruction of Chip Ford, sent a female guard (Llesenia Miranda), home for habitual tardiness. Ex

2 Aff Dominguez, p. 2, ¶ 6; Ex 1 Dominguez, p. 48, ln 5-21.  Appx 187 (Ex 2 at Appx 290; Ex 1 at Appx 218).

PF9:  Ms. Alverez was one of the females that Yates was accused of favoring.  Ex 1 Dominguez, p. 48, ln 5 to p. 49, ln 7; p. 64, ln 19 to p. 65, ln 9. Appx 187 (Ex 1 at Appx 218-19, 220-21). [Remainder omitted due to an erroneous citation.]

PF10:  Yates had admitted to Dominguez that he knew he was being investigated. Yates admitted he had a problem with favoring women and he believed that was the basis of the investigation.  Yates threatened Dominguez that they needed to get aligned or Dominguez could lose his job.  Ex 1 Dominguez, p. 181, ln 22 to p. 182, ln 17; p. 161, ln 17 to p. 162, ln 8; p. 198, ln 25 to p. 199, ln 19.  Appx 187-88 (Ex 1 at Appx 270-71, 266-67, 284-85).

PF11: During his interview with HR on June 10, 2020, Dominguez reported gender discrimination by Yates favoring younger women.  Although she only wrote a brief note, Dominguez "gave her everything about that I knew."  Ex 1 Dominguez, p. 149, ln 23-25; p, 150, ln 14-23; p. 151, ln 3-14. Sutherlin admitted this was a report of gender discrimination.  Ex 3 Sutherline, p. 49, ln 25 to p. 50, ln 22.  Appx 188 (Ex 1 at Appx 259, 260, 261; Ex 3 at Appx 303-04).

PF12:  The evening after being interviewed by HR, Yates called and yelled about Dominguez.  Ex 1 Dominguez, p. 27, ln 1-16.  Appx 188 (Ex 1 at Appx 212).

PF13:  Yates demanded that all the day shift security guards be retrained on how to do temperature checks.  Ex 1 Dominguez, p. 141, ln 1 to p. 143, ln 22. Appx 188 (Ex 1 at Appx 254-56). The day shift security guards were under the supervision of Dominguez and Chasteen.  Ex 1, p. 141, ln10-14; Ex 5

Chasteen, p. 5, ln 26-25. Appx 188 (Ex 1 at Appx 254; Ex 5 at Appx 317). Both Dominguez and Chasteen were trained by Yates about how to do the temperature check training for their guards. Ex 1, p. 129, ln 3-20. Both Dominguez and Chasteen trained their guards in the manner that Yates had trained them. Ex 1, p. 129, ln 21-22; Ex 5 Chasteen, p. 13, ln 22 to p. 16, ln 17. Justin Langwell said Dominguez trained him properly, Ex 7 (Langwell, p. 12, 7 to p. 13, ln 6; p. 19, ln 9 to p. 20, ln 10) as did Ted Williams. Ex 6, Williams, p. 12, ln 3 to p. 20, ln 5. Appx 188 (Ex 1 at Appx 224; Ex 5 at Appx 323-26; Ex 7 at Appx 341-42, 343-44; Ex 6 at Appx 330-38).

PF14: Defendant has now provided other reasons as contributing to the termination (DF 51), however, Dominguez has refuted each of these "reasons." RDF51, above. Plaintiff also has refuted the claim of being disrespectful, a fire alarm issue, being observed on a video, refusing to help with payroll, Ex 1 Dominguez, p. 183, ln 7 to p. 187, ln 16. Appx 188 (Ex 1 at Appx 272-76).

## VII. - SUMMARY OF THE ARGUMENTS

The trial court committed prejudicial error by finding that Mr. Dominguez's prima facie case of retaliation failed on the third (causation) prong of the ***McDonnell Douglas*** formulation, based on a claimed lack of knowledge. In particular, the trial court erred by:

**A. THE TRIAL COURT ERRED IN FAILING TO FIND A PRIMA FACIE CASE OF RETALIATION**

1. - First Prong- A Protected Report - Was Established

2. - The Third Prong of the Prima Facie Was Established

    a. knowledge of Dominguez's participating in a discrimination investigation against Yates was undisputed

-22-

b.  general knowledge of Dominguez's actions was sufficient

c.  the trial court's analysis of the third prima facie prong was erroneous

    i.  the court failed to credit the opportunity for knowledge as a basis for the jury to find that knowledge existed

    ii.  the court drew inferences for the moving party and against the non-moving party

    iii.  the court failed to consider pretext as proof of causation

    iv.  the court required actual knowledge of the protected report and failed to consider Yates' professed beliefs.

## B.  THERE WAS A PROPER CAT'S PAW SHOWING

Mr. Dominguez will now address those issues.

## VIII. - THE STANDARD FOR REVIEW

We review a grant of summary judgment *de novo*. ***Garrison v. Gambro, Inc.***, 428 F.3d 933, 935, 150 Fed. Appx. 819 (10th Cir. 2005). '[W]e will affirm the district court's disposition only if our independent review of the record, viewing the facts in the light most favorable to [the nonmoving party], reveals that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.' ***Johnson v. Weld Cnty., Colo.***, 594 F.3d 1202, 1207 (10th Cir. 2010) (citing Fed. R. Civ. P. 56).

***Kramer v. Wasatch County Sheriff's Office***, 743 F.3d 726, 736 (10th Cir. 2014) (alterations by the Court).

"In reviewing such dispositions, this court repeatedly has emphasized that we must draw all inferences in favor of the party opposing summary judgment[,] [and] in this respect, we must view the evidence in context, not simply in its segmented parts." ***Maldonado v. City of Altus***, 433 F.3d 1294, 1302 (10th Cir. 2006) (Quoting ***O'Shea v. Yellow Tech. Servs***., 185 F.3d 1093, 1096 (10th Cir. 1999) (internal citations omitted)). "In our circuit, '[t]he moving party carries the burden of showing

-23-

beyond a reasonable doubt that it is entitled to summary judgment.'" ***Pelt v. Utah***, 539 F.3d 1271, 1280 (10th Cir. 2008) (Quoting ***Trainor v. Apollo Metal Specialties, Inc***., 318 F.3d 976, 979 (10th Cir. 2002), other quotations omitted).

**WHEREFORE**, with these standards in mind, Mr. Dominguez will address the trial court's opinion and judgment.

## IX. - ARGUMENT AND AUTHORITY

In support of his appeal, Mr. Dominguez sets out the following arguments and authority.

## A. - THE TRIAL COURT ERRED IN FAILING TO FIND A PRIMA FACIE CASE OF RETALIATION

The trial court erred by refusing to find that Mr. Dominguez established a prima facie case of retaliation.

> To demonstrate a prima facie case of retaliation under the ADEA, a plaintiff must show (1) she engaged in protected opposition to discrimination, (2) a reasonable employee would have considered the challenged employment action materially adverse, and (3) a causal connection existed between the protected activity and the materially adverse action.

***Mauldin v. Driscoll***, 136 F.4th 984, 995 (10th Cir. 2025) (Offered as a general statement of the prima facie elements for a retaliation claim).

### 1. - First Prong- A Protected Report- Was Established

The summary judgment order was not predicated on the absence of a protected report, however, Mr. Dominguez will address it as a matter of caution.

At the trial court level, "Weiser halfheartedly argue[d] that Plaintiff did not engage in protected opposition." SJ Order, p. 18 fn 17, Appx 483. The facts shown in the record and found by the trial court were that:

> . . . Charlene Lee-Sutherlin, Weiser's VP of Human Resources, traveled to interview employees as part of the investigation into Mr. Culberson's complaint [of discrimination]. She met with Plaintiff on June 10, 2020.

> During this meeting, Plaintiff reported that Mr. Yates showed favoritism to female employees, particularly those who flirted with him.
> . . .

SJ Order, p. 4, Appx 469.

"The Court assume[d] without deciding that Plaintiff's report to Ms. Lee-Sutherlin would satisfy the first step." SJ Order, p. 18 fn 17, Appx 483. It should be clear that the information supplied by Dominguez during Weiser's investigation into a discrimination complaint was protected. "An employee who 'report[s] discrimination in answering an employer's questions' opposes discrimination." *Dixon v. Okla. ex rel. Reg'l Univ. Sys. of the OK Bd. of Regents*, 125 F.4th 1321, 1339 (10th Cir. 2025) (Quoting *Crawford v. Metro. Gov't of Nashville & Davidson Cnty*, 555 U.S. 271, 279-80 (2009)).  This is true even if the employee merely repeats a prior complaint. "An employee who repeats a complaint of unlawful discrimination 'resist[s]' the discrimination just as much as an employee who makes a novel complaint." *Dixon*, 125 F.4th, at 1340.

**WHEREFORE**, the first prong of the prima facie case was established.

## 2. - The Third Prong of the Prima Facie Was Established

The real focus of the order rested on analysis of the third prong.  Generally, "[a] plaintiff may establish a causal connection by showing that an 'adverse action closely follow[ed] protected activity.'" *Dixon*, 125 F.4th, at 1339 (Quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)).  "When a plaintiff has engaged in multiple protected activities, we measure the temporal proximity between the plaintiff's 'last instance of protected activity' and the adverse employment action." *Dixon, id.*, (Quoting *EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 804 (10th Cir. 2007)).  Here, the last report was June 10 and the termination was on June 19 with the decision having been supposedly made on June 16.  Sum.Judg.Resp., Fact 1(H) & (J),

-25-

Appx 185, Termination Report, Plf Ex 22, Appx 373, Plf Ex 8, Strickland Tr p. 60, ln 4-14, Appx 353. This six to nine day gap is well within the period in which a causal connection will be inferred. **Dixon**, 125 F.4th, at 1339 ("a one and one-half month period between protected activity and adverse action may, by itself, establish causation." (Citation omitted)).

The trial court, however, found that this prong of the prima facie case faltered based on a lack of knowledge by Mr. Strickland– the claimed decisionmaker– and Mr. Yates, the real decisionmaker– as to the substance of Dominguez's report. SJ Order, p. 19-20, 24, Appx 484-485, 489.

### a. - knowledge of Dominguez's participating in a discrimination investigation against Yates was undisputed

Weiser's actors for the termination (Strickland and Yates) never denied knowing that Mr. Dominguez was interviewed on June 10 as part of a discrimination claim against Yates. See Weiser's Summary Judgment Motion, Facts 1-55, pgs 2-13, Appx 20-31, and Weiser's Summary Judgment Reply, pg. 1-13, Appx 412-424. The claimed lack of knowledge was solely as to what Mr. Dominguez said when he was interviewed. See Weiser's Summary Judgment Motion, Facts 47, 48, 49 p. 11-12, Appx 29-30 ("Dominguez did not tell anyone else what he told Sutherlin," "Sutherlin did not tell Yates [or Strickland] what Dominguez had shared with her."), Fact 54, p. 13, Appx 31 ("At the time he made the termination decision decision, Strickland did not know what Dominguez had said to Sutherlin during his interview with her on June 10."). The argument section of Weiser's summary judgment motion also does not challenge knowledge of the fact of Dominguez's interview; only knowledge of what he said. Sum.Judg.Mt, p. 16 ("Strickland did not know the content of Dominguez's conversation with Sutherlin at the time he made the decision to

terminate Dominguez's employment."); p. 22 ("Sutherlin testified she did not tell Yates about Dominguez's comments, and Dominguez has no evidence that Yates even knew that he made unfavorable remarks about Yates to Sutherlin"). In the declaration of Strickland affixed to Weiser's summary judgment motion, Strickland only denies "know[ing] what Dominguez had told Weiser Human Resource Manager Charlene Sutherlin regarding her investigation"; he does not dispute knowing that Dominguez was interviewed. Weiser Sum.Judg. Ex 1, p. 1-4 (particulary Par. 14), Appx 46-50. Similarly, Ms. Lee-Sutherlin's Declaration only states:

> 8. I did not debrief Strickland, Yates, or Halliburton employee Chip Ford about the details of what the employee's I interviewed, including Dominguez, told me.
> 9. I did not tell Strickland that Dominguez told me Yates favored female security guards.

Sum.Judg. Ex 10, p. 1-2, Appx 116-117.

Weiser's Reply Brief argued only that Yates and Strickland did not know what Dominguez actually said in his interview. Reply, pg 6 ("Yates 'did not know any of the specifics of the complaint. . .'"), p. 10 ("[N]either Strickland nor Yates knew of Dominguez's comments to Sutherlin. Strickland made the termination decision without knowing of the protected action. . .")

> When a defendant files a motion for summary judgment, he has to show that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. The opposing party ... has no 'burden of proof,' as such [and] in resisting defendants' motion for summary judgment, [the nonmoving party] only has a 'burden,' if that be the appropriate word, to identify specific facts posing genuine issues of material fact.

*Lake Hefner Open Space Alliance v. Dole*, 871 F.2d 943, 945 (10th Cir.1989) (quoted with approval in *Trainor v. Apollo Metal Specialities, Inc*. 318 F.3d 976, 982 (10th Cir. 2002)). Put another way, "it is unquestionable that a non-moving party is not required to establish the existence of genuine issues of material fact for trial

matters not addressed by the summary judgment motion." ***O'Toole v. Northrop Grumman Corp.,*** 305 F.3d 1222, 1227 (10th Cir. 2002). Thus, the knowledge of Weiser's actor regarding Dominguez's participation in the discrimination investigation was not contested, and the trial court's decision did not question these elements of knowledge.

It was also undisputed that both Strickland and Yates knew the investigation involved discrimination claims. Strickland was given a copy of the actual race complaint before the investigation. Sum.Judg.Resp., p. 6, PF 40, Appx 178, citing to Sutherlin Tr, p. 20, ln 13-14 (also lines 22-24), p. 25, ln 16-22, Appx 293-294. Yates told Dominguez that "he knew that complaints about gender treatment had been made against him" and "that he knew that he was going to be investigated for that." Sum.Judg.Resp., pg 15-16, PF 10, Appx 187-188 from Dominguez Tr, p. 181, ln 22 to p. 182, ln 12, Appx 270-271:

> Q.  Now, did Mr. Yates express to you in the weeks prior to the June 10th interviews that he knew that complaints about gender treatment had been made against him?
> A.  Yes.
> Q.  You indicated you were– had a conversation where he admitted that he had a problem and treated women better than men?
> A.  Yes.
> Q.  Was that conversation one that occurred within the time period shortly before the interviews?
> A.  Yes.
> Q.  Okay. And in connection with that conversation did he tell you that he knew that he was being investigated for that?
> A.  Yes.

Tr Dominguez, p. 181, ln 22 to p. 182, ln 12, Appx 270-271.

It was in the context of this conversation that Yates warned Dominguez that he needed to be aligned or one them would lose their job. ***Id***., p. 161, ln 21 to p. 162, ln 1; p. 182, ln 13-17; p. 198, ln 1-7. Dominguez viewed that as threat. ***Id***., p. 182, ln 18-22.

Dominguez asserted that because Yates and Strickland were in close communication about Dominguez during this period, a jury could infer that Yates had shared his knowledge and beliefs with Strickland.  Sum.Judg.Resp., pg 22, Appx 194 relying on *Anderson v. Phillips Petroleum Co.*, 861 F.2d 631, 634-35 (10th Cir.1988) and *Enstrom v. Beech Aircraft Corp.*, 712 F.Supp. 841, 849 (D.Kan.1989).

Strickland did not admit or deny that Yates' told him of his (Yates') belief that Dominguez was making a report regarding gender discrimination by Yates.

### b. - general knowledge of Dominguez's actions was sufficient

Mr. Dominguez asserts that the record of the interaction between Yates and Strickland is sufficient to meet his light burden of inferring knowledge at the prima facie stage.

Admittedly, the undersigned counsel had not viewed proof of 'knowledge' as an essential part of the prima facie case because such knowledge was peculiarly within the employer's information.  "[W]here the facts with regard to an issue lie peculiarly in the knowledge of a party, 'that party is best situated to  bear the burden of proof.'" *Smith v. United States*, 568 U.S. 106, 112 (2013) (quoting *Dixon v. United States*, 548 U.S. 1, 9 (2006); alteration in original).

The district judge was, however, correct that the Tenth Circuit requires a showing of knowledge as part of the prima facie formulation.  See SJ Order, p. 18-19, Appx 483-484 (citing cases).

Fortunately, notwithstanding this initial error, counsel did address the issue of knowledge in his facts, RDF40, 47, PF1(A), (D), PF 10 (Appx 178, 179, 183-84, 187-88 respectively), and in his argument.  See Sum.Judg.Resp. at page 22 relying on *Anderson* and *Enstrom (both supra)* as authority for the proposition that a jury could find that Strickland had the opportunity to learn of Yates' beliefs.

There is authority from other circuits that corporate knowledge of an employee's report of discrimination is sufficient for the light burden of establishing the knowledge component of the retaliation prima facie case. In ***Gordon v. New York Bd of Educ***., 232 F.3d 111, 116 (2nd Cir. 2000):

> With respect to the second required element, both parties have conceded that the *Board, qua* board, knew of Gordon's protected activity. In the district court's jury charge, however, the court went further. It instructed the jury that 'to satisfy the [knowledge requirement], the plaintiff must show that the Board of Education's ***agents*** [viz., Maurice, Miller and Pallen] . . . knew' of Gordon's protected activity (emphasis added). Neither this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge that the plaintiff has engaged in a protected activity. . . .

While holding that corporate knowledge was sufficient for the prima facie case, the Second Circuit recognized that the knowledge of the actors was important but not dispositive:

> The lack of knowledge on the part of particular individual agents is admissible as some evidence of a lack of a causal connection, countering plaintiff's circumstantial evidence of proximity or disparate treatment. ***See Alston***, 14 F. Supp. 2d at 312-13. A jury, however, can find retaliation even if the agent denies direct knowledge of a plaintiff's protected activities, for example, so long as the jury finds that the circumstances evidence knowledge of the protected activities or the jury concludes that an agent is acting explicitly or implicit upon the orders of a superior who has the requisite knowledge. ***See id.*** at 311. . .

***Id.***, 232 F.3d, at 117.

The First Circuit has agreed with this analysis. ***See Harrington v. Aggregate Indus.-Northeast Region, Inc***., 668 F.3d 25, 31-32 (1st Cir. 2012) (citing ***Gordon***). Similarly, the District of Columbia Circuit has "repeatedly recognized that the precise kind of evidence Jones has offered–that 'the ***employer*** had knowledge of the employee's protected activity, and the adverse personnel action took place shortly after that activity'–is 'adequate to permit an inference of retaliatory motive,' at least

-30-

at the prima facie stage." ***Jones v. Bernanke***, 384 U.S. App. D.C. 443, 452, 557 F.3d 670, 679 (2009) (emphasis by the Court).

Nonetheless, it appears that this Circuit requires more, to wit: a showing that the deciding officials possessed knowledge of the protected conduct. ***Singh v. Cordle***, 936 F.3d 1022, 1043 (10th Cir. 2019) ("a plaintiff who seeks to show causation in this manner still must present evidence that the *decisionmakers knew* of the protected conduct." (emphasis added)).

Counsel recognizes that this Circuit must follow its precedent, however,the background of corporate knowledge is important. When there is specific corporate knowledge of the protected report– as possessed by Ms. Sutherlin– **and** the decisionmakers know at least generally of the employee's participation in a discrimination investigation, that combination of factors should be enough. As explained previously, Weiser did not deny that Strickland and Yates knew of a discrimination investigation and knew that Dominguez was interviewed as part of that investigation. As set out above, Yates *believed* Dominguez was responsible for the bulk of the complaints against himself and had threatened Dominguez that "me and him had to get aligned, we had to start working together, because if we weren't going to work together it was going to be either my job or his job." Tr Dominguez, p. 161, ln 23 to p. 162, ln 1, Appx 266-267 (cited in PF 10, Resp.Sum.Judg. p. 15-16, Appx 187-188). Dominguez stated this conversation was in the context where Yates admitted knowing he was going to be investigated. ***Id.***, Tr Dominguez, p. 182, ln 13-17, Appx 271.

Dominguez contends that this level of knowledge is sufficient to satisfy what is supposed to be a 'light' burden. See ***Orr v. City of Albuquerque***, 417 F.3d 1144, 1149 (10th Cir. 2005) (describing the burden of establishing a prima facie case as

"slight").

This Court recently has suggested that a decisionmaker being 'aware' of the employee's EEO activities was enough for this prong of a retaliation prima facie case:

> 'As a prerequisite to this showing, [Mauldin] must first come forward with evidence from which a reasonable factfinder could conclude that' Buckner had knowledge of Mauldin's protected activity. [***Hinds v. Sprint/United Mgmt. Co.***, 523 F.3d 1187 (10th Cir. 2008)], at 1203. The parties may dispute whether and how Buckner confronted her about the protected activity, but Mauldin has provided sufficient evidence to demonstrate that Buckner at least knew about such activity. See Aplt. App. II at 76 (declaring that Buckner was 'aware' of her EEO activity).

***Mauldin v. Driscoll***, 136 F.4th 984,995 (10th Cir. 2025).  In ***Mauldin***, it appears that the decisionmaker had more knowledge of the plaintiff's activities than is admitted in this case.  Nonetheless, it also appears that under ***Mauldin***, something less than the full knowledge required by the trial court is sufficient.

**WHEREFORE**, Dominguez's evidence was sufficient to establish the third prong of the prima facie case.

### c. - the trial court's analysis of the third prima facie prong was erroneous

The trial court's analysis of the third prong was erroneous for the following reasons:

i.    the court failed to credit the opportunity for knowledge as a basis for the jury to find that knowledge existed

ii.   the court drew inferences for the moving party and against the non-moving party

iii.  the court failed to consider pretext as proof of causation

iv.   the court required actual knowledge of the protected report and failed to consider Yates' professed beliefs.

*i. - the jury could infer knowledge from the conversations between Yates and Strickland*

As stated above, Dominguez argued below that a jury could find that Yates was in regular communication with Strickland about Dominguez during the period following Dominguez's interview on June 10 and the termination June 19, and because it is undisputed that those conversations involved Yates' complaining about Dominguez, a jury could infer that Yates also shared his belief that Dominguez had reported Yates' disparate treatment of young women:

> Mr. Strickland was clearly in close communication with Mr. Yates. PF1(F), (G), (I), (J), (L) [Appx 184-185]. Yates admitted to both Dominguez and Sutherlin knowing that the June investigation centered on him. RDF 47, PF1(A), (B), PF10. [Appx 179, 185-187] Yates had admitted to Dominguez that he had favored females, and Yates knew that the complaints about him centered on his favoritism of females. *Id*. Yates knew or believed that Mr. Dominguez was both the source and conduit for complaints about Yates' discrimination. *Id*. Yates threatened Mr. Dominguez's job if Dominguez didn't protect Yates. *Id*. Yates knew that Dominguez was interviewed on June 10 and angrily called Mr. Dominguez that very evening after complaining about Dominguez to HR. PF1(D), PF12 [Appx 183-84, 188].

Sum.Judg.Ans.Bf, p. 22-23, Appx 194-195.

The District Court recognized Mr. Strickland's denial of knowledge was "not dispositive." SJ Order, p. 20, Appx 485. However, the trial court refused to accept the argument that "a jury question may be established by the *opportunity* to have learned of the matter." SJ Order, p. 20, discussion, p. 21-22, Appx 486-87. The Court focused on the declaration of the HR officer denying that *she* conveyed information to Mr. Strickland. SJ Order, *id*. Mr. Dominguez, however, had pointed to Yates–not the HR officer–as the likely source of Strickland's knowledge about Dominguez's role in the discrimination investigation. Sum.Judg.Ans.Bf, p. 22-23, Appx 194-195. Notably, Strickland's Declaration did not address what Yates told Strickland, but only stated that Strickland "did not know what Dominguez had told

[Ms. Lee-Sutherlin] regarding her investigation." See Weiser SJ, Ex 1, Strickland Dec., p. 3, ¶¶ 14-15, Appx 409.

Weiser's Reply Brief did not dispute Appellant's argument that the opportunity to have learned of Dominguez's involvement in the investigation of Yates was sufficient to create a fact issue on knowledge. Weiser's Sum.Judg.Reply, Appx at pages 411-424. The only discussion of "causation" appears in the Reply, Prop. D, p. 10, Appx 421. The Reply says nothing about Strickland's communications with Yates, Strickland's opportunity to have learned of Yates' beliefs, or Dominguez's authorities on that point.

*ii. - the trial court erroneously drew inferences against the moving party*

Although Yates had been communicating with Strickland trying to get Dominguez fired, the trial court discounted this and drew evidentiary inferences against Mr. Dominguez.

> . . . Plaintiff argues only that Mr. Yates and Mr. Strickland had 'been communicating,' and that Mr. 'Yates had been providing negative information about [Plaintiff].' Resp. at 26. But is not clear how Mr. Yates' conveyance of negative information about Plaintiff– including his purported failures to train guards and show up for the Saturday training– suggests he told Mr. Strickland about Plaintiff's gender discrimination complaint. It is undisputed that when Plaintiff reported Mr. Yates' gender discrimination to Mr. Strickland in January, 2020, he was given an 'officer of the month' award and additional responsibilities, while Mr. Yates lost responsibilities on his return.

SJ Order, p. 21-22, Appx 486-87.

To break this down,

First, the court did not believe that Yates' communications to Strickland falsely reporting performance issues gave any indication that he was likely to share his beliefs about Dominguez's involvement in the investigation.

Second, the court appeared to infer that because there were no repercussions

to Dominguez after his first report of sexual favoritism by Yates, no inference of hostility could be drawn from the second report.

**As to the prospect that Yates would share his beliefs about Dominguez's role in the discrimination investigation**, evidence indicated that Yates blamed Dominguez for the discrimination complaints and investigation against himself. Yates threatened Dominguez (to Dominguez's understanding) that the two of them needed to get aligned or someone would lose their job. Sum.Judg.Resp., PF1(B)[1], p. 11. During his investigatory interview, Yates focused on blaming Dominguez for the bulk of the issues. *Id.,* PF1(A), (D), p. 11-12, Appx 183-84.[2] Yates told Dominguez at least one management official "was his guy, it didn't matter what happened, they were going to protect him." *Id.*, PF 1(B), citing Tr Dominguez, p. 162, ln 5-8, Appx 267.

It would seem unusual for Strickland to not ask why Yates suddenly had complaints about Dominguez, or for Strickland to fire Dominguez, recently employee of the month, without asking for an explanation of newly raised performance issues.

---

[1] In a separate portion of that fact, counsel incorrectly quoted from Dominguez's transcript mixing part of a question with the answer. The Court noted this error in the SJ Order, p. 25-26 fn 24 and graciously, and correctly, "presume[d] this amalgamation was an oversight and not an attempt to mislead." The more appropriate citation was to Dominguez Tr, p. 182, ln 13-22 (Appx 271) and p. 198, ln 1-13 (Appx 284) cited in PF 10, p. 15-16, Appx 187-188.

[2] Citing SJR Ex 3, Sutherlin Tr, p. 35, ln 1 to p. 34, ln 6, Appx 299-300; p. 77, ln 18 to p. 79, ln 2, Appx 309-311 ; Ex 1 Dominguez Tr, p. 161, ln 17 to p. 162, ln 8, Appx 266-267.  See also Ex 1 Dominguez, p. 181, ln 22 to p. 182, ln 1, Appx 270-271.

A jury which received evidence showing these complaints were made up[3] could well conclude that Strickland did not ask about the performance complaints because he already knew the real reason (retaliation) why Yates wanted Dominguez gone.

Similarly, **the court erred by drawing an inference that Weiser's prior treatment showed it would not retaliate**. Mr. Dominguez had received an award for performance after making a prior report of sexual misconduct against Yates. Though not precedential, ***Sorensen v. AMTRAK,*** 786 F. App'x 652, 653-54 (9th Cir. 2019) explains that:

> . . An employer may find the later complaint uniquely objectionable, even if finding earlier ones permissible, or the last complaint may also, as Sorensen argues in this case, be the final straw.

Yates was apparently on a protracted absence when the first complaint was raised.[4] That he did not seek retaliation at that time does not suggest he would not seek retaliation when he returned or when he believed the complaint was being renewed and investigated. Although the Court's inference might be permissible for the jury, a contrary inference is at least as likely. The point being, this was not a permissible inference for the Court to draw. "[T]he very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable." ***Schulz v. Pennsylvania R.R. Co.***, 350 U.S. 523, 526 (1956) (quoting ***Tennant v. Peoria & P.U. Ry. Co.***, 321 U.S. 29, 35 (1944)).

Later in its Order, the court engaged in other instances of improperly weighing

---

[3] The court ultimately concluded that "it is undisputed for summary judgment purposes that Mr. Yates did not tell Plaintiff to attend this training." SJ Order, p. 7 fn 9, Appx 472.

[4] Weiser's Mt.Sum.Judg., p. 3, Fact 6 ("Yates took a leave of absence for medical reasons beginning in late 2019, which continued into early 2020."), Appx 21.

the evidence and drawing inferences.

Dominguez pointed out that the evening of June 10, the same day after he made his report of discriminatory conduct by Yates, Yates called him angry and yelling. The trial court dismissed this, saying, "the mere existence of the phone call is insufficient to allow [a] reasonable factfinder to infer that Mr. Yates knew about Plaintiff's report." SJ Order, p. 26, Appx 491. That misses the inference the jury could draw: Yates *knew* Dominguez had been interviewed and *anticipated* that Dominguez had reported Yates' sexual favoritism. This was, in fact, Dominguez's explanation for the call. Mt.Sum.Judg.Resp. RDF 29, p 4 (Appx 176) (citing Dominguez Tr, p. 203, ln 8 to p. 204, ln 4, Appx 286-87):

> Q. And after you had come in and been interviewed, when [Yates] called you up, was he calm or was he angry?
> A. He was angry and proceeded to yell at me.
> Q. Was there anything for him to be angry about other than what you might have said in the interview?
> A. Just whatever I said in the interview.
>
> \*       \*       \*
>
> Q. So is it a reasonable inference from those circumstances that he knew you hadn't been favorable toward him?
> A. Yeah.

Tr Dominguez, p. 203, ln 8 to p. 204, ln 1 (objections omitted).

Similarly, the trial court discounted Yates' pre-report statements regarding the investigation and Yates' 'problem with women' saying "this evidence *cannot demonstrate* that Mr. Yates harbored a discriminatory animus on the basis of Plaintiff's yet-unmade claim of gender discrimination." SJ Order, p. 24, Appx 489 (emphasis added). But such conversations could readily be viewed as indicating how Yates would react if Dominguez participated in the investigation.

The trial court went on to say:

> . . .the proffered evidence paints a picture of ongoing tension between Plaintiff and Mr. Yates that arose weeks before the protected action occurred. But Mr. Yates' 'alleged prior mistreatment of Plaintiff is not evidence that []he was aware of Plaintiff's formal complaints.' **Singh**, 936 F.3d at 1045. 'Rather, it is evidence that, even without knowing of Plaintiff's formal complaints, [Mr. Yates] was inclined to' seek Plaintiff's termination 'for the slightest reason.' **Id.**

SJ Order, p. 24, Appx 498.

Respectfully, this is the court's spin on facts ***not in the record*** and inferences contrary to the record. The court does not cite to any disagreement or mistreatment of Dominguez by Yates prior to notification of the investigation. Yates' never disciplined Dominguez prior to termination. Sum.Judg.Resp., p. 7, RDF50-51, Appx 179 (citing Dominguez Tr, p. 71, ln 10-12, Appx 222. The conversations Dominguez cited were always in the context of Yates' concerns about an investigation which Yates thought was based on the preferential treatment of women. See Sum.Judg.Resp, p. 7, RDF 47, Appx 179 (cited and quoted previously). The statement about getting aligned was specifically in the context of the perceived investigation and sexual favoritism complaints. Sum.Judg.Resp., p. 15-16, PF10, Appx 187-188 from Dominguez Tr, p. 182, ln 2-17.

Moreover, there is no record of Yates having complaints about Dominguez prior to June 4– the date Yates learned an investigation was actually coming.[5] See Sum.Judg.Resp., p. 11, PF1(A) (giving date Yates knew), and (C) (beginning date for Yates' complaints about Dominguez). Thus, the Court's assumption that there were

---

[5] In reviewing the record for this appeal, counsel has noted that the transcript testimony is ambiguous as to whether Yates knew of the investigation by June 4. The explicit date is from a deposition exhibit which was **not** made part of the summary judgment record. Weiser's Reply Brief, while disputing parts of PF 1(A), does not dispute that Yates knew of the coming investigation by June 4. Sum.Judg.Reply, p. 6, Appx 417.

problems that existed other than Yates' concerns about reports against him is not supported by the record, and certainly not based on undisputed facts.

On summary judgment the court must "constru[e] all evidence and draw[] any inferences in the light most favorable to the party opposing summary judgment." *EagleMed LLC v. Cox*, 868 F.3d 893, 899 (10th Cir.2017). The trial court committed error by failing to follow that command.

*iii. - error in the failure to consider pretext as evidence of causation*

The trial court declined to consider Dominguez's evidence of pretext in deciding the third prong of the prima facie case.  SJ Order, p. 27 fn 26, Appx.  In this regard, the trial court cited the non-precedential decision in *Nealis v. CoxCom, LLC*, 731 F. App'x 787, 791 n.2 (10th Cir. 2018).  Under *Nealis*, "a plaintiff hoping to prove her prima facie case by attacking the employer's reason for his termination must still show 'a demonstrable nexus between aspersions cast on an employer's stated reasons and invidious intent.'"  *Id.*, quoting *Adamson v. Multi Cnty. Diversified Servs, Inc*., 514 F.3d 1136, 1144 (10th Cir.2008).   Here, Dominguez showed that the trigger[6] for his termination– the alleged failure to attend training– was made up because no such instruction was given.  See fn 3, above.  This reason came two days after Dominguez's HR interview and just a day after Yates' HR interview, where Yates "believed [Dominguez] was where a bulk of the issues were coming up." Resp.Sum.Judg, p. 11-12, PF1(D), Appx 183-184 citing Sutherlin Tr, p. 79, ln 10-18, Appx 311.  See also Sutherlin Tr, p. 77, ln 18 to p. 79, ln 7 (Appx 309-311).   Surely, that ties the fabricated complaint to Yates' displeasure over Dominguez's perceived report.  Thus, the court "erred in refusing to consider pretext

---

[6]  Dominguez refuted each of the claimed reasons for discipline.  See Sum.Judg.Resp., p. 7-10, RDF 50-51, 52-53, Appx 179-182.

in determining there was no evidence of a causal connection between her complaints about [the] conduct and her termination, contrary to ***Proctor v. United Pacel Service***, 502 F.3d 1200, 1209 (10th Cir. 2007)." ***Bertsch v. Overstock.com***, 684 F.3d 1023, 1029 (10th Cir. 2012).

*iv. - the trial court adopted an erroneous 'actual knowledge' standard*

The thrust of the court's order appears to be that "Plaintiff has not articulated how a reasonable factfinder could conclude Mr. Strickland knew about Plaintiff's June 10 report." SJ Order, p. 22, Appx 487.  Similarly, the trial court argued that "Plaintiff has not proffered evidence from which a factfinder could conclude that Mr. Yates *knew* about the protected report." SJ Order, p. 24, Appx 489 (emphasis by the court). The evidence would allow a jury to infer that Yates *believed* Dominguez had reported Yates' gender discrimination even if Yates did not know that for a certainty.

The trial court, however, believed that statements of intent which proceeded the actual protected report could not be evidence of knowledge or an intent to retaliate:

> . . .Most of [Dominguez's] cited evidence pertains to events that occurred before Plaintiff made his June 10 report.  Necessarily, this evidence cannot demonstrate that Mr. Yates harbored a discriminatory animus on the basis of Plaintiff's yet-unmade claim of gender discrimination. . .

SJ Order, p. 24, Appx 489.

The court cited no supporting case law, and this conclusion is clearly wrong. *Of course* evidence of Yates' *beliefs* and hostility towards future acts can be relevant evidence of a retaliatory intent.  It does not require a citation to the law to understand that a retaliatory intent can be formed based on the *anticipation* of something that will occur in the future.  Similarly, it is black-letter law that virtually any evidence of intent is admissible. ***Accord Herbert v. Lando***, 441 U.S. 153, 165 (1979) ("Courts have traditionally admitted any direct or indirect evidence relevant to the state of mind of

the defendant").

> Where, as here, the disputed evidence is offered to show motive, the relevancy hurdle is at its nadir. Motive is, by definition, subjective in nature; it is a state of mind that is shown by proving the emotion that brings it into being. Thus, as to such testimony, Professor Wigmore has observed that:
>> [A] circumstance showing the probability of appropriate ensuing action. . . is always relevant. . . .
>
> 1 Wigmore on Evidence § 118 at 558 (3d ed. 1940). As to such proof, relevancy objections have long been disfavored. *E.g., Moore v. United States,* 150 U.S. 57, 60-61 (1893). And, in recognition of these pragmatic truths, the better-reasoned view has come to be that
>> [I]n general, *any fact may be offered* which by possibility can be conceived as tending with others towards the emotion in question.
>
> *United States v. Day,* 591 F.2d 861, 874-75 (D.C.Cir.1978) (quoting 2 Wigmore, *op. cit. supra,* § 389 at 329) (emphasis original).

*United States v. Tierney,* 760 F.2d 382, 387 (1st Cir.1985).

Mr. Dominguez explained in his response to summary judgment that actual knowledge of what Dominguez said on June 10 was not required. See Sum.Judg.Resp., p. 22 & fn 2:

> . . .Yates knew or believed that Mr. Dominguez was both the source and conduit for complaints about Yates' discrimination.
>
> *      *      *
>
> [fn 2] Yates' belief is enough; actual knowledge is not required. *Heffernan v. City of Paterson*, 578 U.S. __, ___, 136 S. Ct. 1412, 1418 (2016) (retaliation may be based on a false belief which is contrary to the true facts). *See also Reich v. Hoy Shoe Co.*, 32 F.3d 361, 368 (8th Cir. 1994) ("[C]ommon sense and experience establish that employers also make employment decisions on what they suspect or believe to be true" even if it is not).

The trial court erred by refusing to consider this, asserting that "[t]his argument is underdeveloped and insufficient to carry Plaintiff's burden at the prima facie stage." SJ Order, p. 25 fn 22, Appx 490.

Respectfully, this argument is not 'underdeveloped.' It is a concise statement of a well-understood, commonsense explanation about how people make decisions. The statement is supported by two case citations which identify the specific pages

relevant to the holding, and the statement contains a summary of one holding and the pertinent quotation from the other holding.  This should be enough to preserve the simple proposition that an actor's belief suffices to prove motive.  We understand from common experience that people act on their beliefs. Indeed, in criminal cases, threats are routinely admissible to show intent and consciousness of guilt.  *See United States v. Nichols*, 374 F.3d 959, 967 (10th Cir. 2004) ("[T]hreats show the defendant's intent to prevent the witness from testifying, and are thus an implicit acknowledgment of the defendant's guilt.") vacated on other grounds *Nichols v. United States*, 543 U.S. 1113 (2005).

When the trial court found this issue to be so underdeveloped that it was not considered, Mr. Dominguez filed a post-judgment Rule 59 motion to correct that erroneous contention.  See Rule 59 Motion, p. 1-6, Appx 494-499.  Dominguez pointed out that the Tenth Circuit had specifically recognized  that in Title VII cases, "[a]ction taken against an individual in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact".  *Id.*, Mt, p. 3 (quoting *Sauers v. Salt Lake County*, 1 F.3d 1122, 1128 (10th Cir. 1993)).  The trial court denied the motion,  Order Rule 59, p. 1-6, Appx 514-519, in part by asserting that the elaboration on the admissibility of Yates' belief came too late.  Order, p. 3, Appx 516.

While the trial court asserted that its holding was not at broad as Dominguez understood it to be, the Court still did not factor in Yates' statements or retreat from the prior holding that "this evidence cannot demonstrate that Mr. Yates harbored a discriminatory animus on the basis of Plaintiff's yet-unmade claim of gender discrimination." SJ Order, p. 24, Appx 489. Dominguez could not readily foresee that the court would hold that this evidence was irrelevant, as even the Defendant did not

object to its relevance.  Thus, Dominguez's Rule 59 motion was proper to correct the court's legal error.  ***United States v. Lopez,*** 131 F.4th 1114, 1121 (10th Cir. 2025) (abuse of discretion standard on exclusion of evidence may be shown by a legal or factual error).

### CONCLUSION TO PROP A - PRIMA FACIE CASE

For all of the reasons set out above, the trial court's conclusion that the prima facie case failed due an inadequate showing of knowledge must be reversed.

### B. - THERE WAS A PROPER CAT'S PAW SHOWING

Dominguez showed that even if Strickland was the purported decisionmaker, there was sufficient evidence to demonstrate that Yates had actually caused the termination.  Sum.Judg.Resp. Prop. V, p. 23-26, Appx 195-198.

The trial court rejected that argument.  Although it assumed that Dominguez's evidence "could satisfy the second and third elements of the cat's paw inquiry,"  SJ Order, p. 24, Appx 489, the court refused to apply the ***Staub*** doctrine finding "no evidence that Mr. Yates was motivated by retaliatory animus. * * * More fundamentally, Plaintiff has not proffered evidence from which the factfinder could conclude that Mr. Yates *knew* about the protected report." ***Id.***, emphasis by the Court.

The knowledge issue has been addressed above, and those arguments will not be repeated in detail.  It should suffice to say that Yates' demand that Dominguez and he get aligned could reasonably be viewed as a threat against cooperating in the investigation.  Likewise, Yates' angry phone call the evening after Dominguez was interviewed could reasonably be viewed as anger over that fact that Dominguez had consented to be interviewed.  Further, fabricating an accusation that Dominguez failed to attend Saturday training indicates the kind of mendacity equating to retaliatory animus.  Those inferences were (and are) for the jury– not for the trial court.

-43-

**WHEREFORE**, the trial court's denial of the cat's paw doctrine in this case was error which should be reversed by this Court.

## X. - CONCLUSION AND RELIEF SOUGHT

This Court should reverse the District Court's Order granting summary judgment in its entirety, reverse the judgment, and remand the case to the District Court for trial on the merits.

## XI. - STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested for the reason that this case presents an important question as to quantum of knowledge a plaintiff must show in support of a retaliation claim. How much and what kind of knowledge is required is an important issue with wide application which represents a matter of first impression in this Circuit.

## XII. - CERTIFICATE AS TO THE WORD COUNT OF THE BRIEF

Pursuant to Fed.R.App.P. 32(a)(7)(B)(i), this brief contains 12,968 words.

**RESPECTFULLY SUBMITTED THIS 2nd DAY OF JULY, 2025**.

> s/Mark Hammons
> Mark Hammons, OBA No. 3784
> Amber L. Hurst, OBA NO. 21231
> HAMMONS, HURST & ASSOCIATES
> 325 Dean A. McGee
> Oklahoma City, Oklahoma  73102
> (405) 235-6100 (telephone)
> (405) 235-6111(facsimile)
> assistant@hammonslaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to 10TH Cir. R. 32, Appellant hereby certifies that on July 2, 2025, the "Appellant's Opening Brief" is being filed using the court's CM/ECF system which will then send notification of such filing to the following parties listed on the Certificate of Service below. Additionally, Appellant certifies that (a) all required privacy redactions have been made, (b) that the hard copies to be submitted to the

court are exact copies of the version submitted electronically and (c) that the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program, and is free of viruses.

s/Mark Hammons

## CERTIFICATE OF SERVICE

A true copy of the foregoing filed electronically and delivered via ECF to opposing counsel below listed on the 2nd day of July, 2025:

Nathan L. Whatley, OBA # 14601
McAfee & Taft PC
Eight Floor Two Leadership Square
211 N. Robinson Ave.
Oklahoma City, OK 73102-7103
Ph:    (405) 235-9621
Fax:   (405) 235-0439
email: nathan.whatley@mcafeetaft.com

s/Mark Hammons

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JUAN DOMINGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-653-SLP |
| | ) | |
| WEISER SECURITY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **O R D E R**

Before the Court is the Motion for Summary Judgment [Doc. No. 27] filed by

Defendant Weiser Security Services, Inc. ("Weiser").  It is at issue.[1]  *See* Pl.'s Resp.

[Doc. No. 46]; Def.'s Reply [Doc. No. 54].  For the following reasons, the Motion is

GRANTED.

## I.   **Governing Standard**

Summary judgment is appropriate if there is "no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a).  A dispute is only genuine  "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238,

1251 (10th Cir. 2015) (quoting  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)).  And a fact is only material if it "might affect the outcome of the suit under the

governing law."  *Id.* (quoting  *Anderson*, 477 U.S. at 248).  The Court's function at the

summary judgment stage is not to weigh the evidence, but to determine whether there is a

---

[1] Plaintiff also filed an Application to Set Defendant's Summary Judgment Motion for Oral
Argument [Doc. No. 60].  That motion is DENIED as moot.

genuine issue for trial.  *Anderson*, 477 U.S. at 249; *see also Roberts v. Jackson Hole Mountain Resort Corp.*, 884 F.3d 967, 972 (10th Cir. 2018).  In doing so, the Court "view[s] the factual record and draw[s] any reasonable inferences therefrom in the light most favorable to the nonmoving party."  *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).  The Court may grant summary judgment if the nonmovant comes forward with evidence that "is merely colorable . . . or is not significantly probative."  *Anderson*, 477 U.S. at 249.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

## II.   <u>Undisputed Material Facts</u>[2]

Defendant Weiser is a corporation that provides commercial security services.[3]  In the fall of 2018, Weiser began providing security services to Halliburton at its Duncan, Oklahoma location.  Around that same time, Weiser hired Plaintiff as a day shift supervisor.  Plaintiff, who oversaw Weiser security guards stationed at Halliburton's

---

[2] The Court includes facts that are material, supported by the summary judgment record, and not genuinely disputed.  *See* Fed. R. Civ. P. 56(c).  The Court omits facts that are supported only by otherwise inadmissible evidence, as detailed below.

[3] In reciting its 55 undisputed facts, Defendant regularly fails to provide appropriate pinpoint citations to multi-page exhibits.  *See, e.g.*, Def.'s UMF ¶ 15 (quoting from Exhibits 8 and 9 without specificity); Def.'s UMF ¶ 16 (citing Exhibit 9 without specificity); Def.'s UMF ¶¶ 18–21 (citing Exhibit 8 without specificity).  This practice, which violates both the Federal Rules of Civil Procedure and this Court's Local Civil Rules, needlessly wastes time and judicial resources.  *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring "cit[ations] to particular parts of materials in the record"); LCvR 56.1(d) (same).

2

Duncan site, reported to site manager Joseph Yates.  Mr. Yates, in turn, reported to Texas-based branch manager Mike Strickland.

At all relevant times, Chip Ford worked for Halliburton as the Duncan facility's security manager.  Halliburton, as Weiser's client, expected Weiser personnel to follow Halliburton's safety rules.  Part of Plaintiff's duties as supervisor at the Halliburton site included following Halliburton's procedures and maintaining its satisfaction with Weiser's services.  He was also responsible for providing medical and safety training—including First Aid, CPR, and defibrillator training—to Weiser employees at the Halliburton site.

Mr. Yates, Plaintiff's direct supervisor, began taking medical leave at some point in 2019.  During Mr. Yates's absence, Plaintiff met with Mr. Ford, Mr. Strickland, and Weiser VP Robert Bullock to report that Mr. Yates favored female employees.  This report, which was made sometime before Mr. Yates returned from leave in January or February 2020, is not the basis of Plaintiff's retaliation claim.  *See* Compl. [Doc. No. 1] ¶ 10 ("On or around June 10, 2020, Plaintiff participated in protected activity . . . .").  At some point while Mr. Yates was on leave, Plaintiff sent another employee home for being "like two minutes late."  Pl. Dep. [Doc. No. 27-2] at 95:4–10.

After Mr. Yates returned, Weiser put Plaintiff in charge of issues related to employee relations—a responsibility that had previously belonged to Mr. Yates.  Around that same time, Weiser issued its first and only "Officer of the Month" award to Plaintiff.  On or around June 2—after Mr. Yates returned from leave but before Plaintiff made the protected report at issue here—Mr. Yates told Plaintiff the two of them "had to get

aligned" and "had to start working together, because if [they] weren't going to work together it was going to be either [Plaintiff's] job or [Mr. Yates's] job."  Pl. Dep. [Doc. No. 46-1] at 161:1–162:1.

In April 2020, a Black security guard named Robert Culberson told Weiser's HR department that the company had discriminated against him because of his race.  Mr. Strickland and Mr. Ford were made aware of the complaint, and Weiser launched an investigation.[4]  Charlene Lee-Sutherlin, Weiser's VP of Human Resources, traveled to the Duncan location to interview employees as part of the investigation into Mr. Culberson's complaint.  She met with Plaintiff on June 10, 2020.

During this meeting, Plaintiff reported that Mr. Yates showed favoritism to female employees, particularly those who flirted with him.[5]  The majority of their conversation, however, focused on Mr. Culberson's complaint.  This was the first and only meeting between Plaintiff and anyone from Weiser's HR department prior to his termination. Plaintiff did not discuss the content of his conversation with Ms. Lee-Sutherlin with anyone else, but his comments echoed those he had previously made to Mr. Strickland, Mr. Ford, and Mr. Bullock during Mr. Yates's leave.  Ms. Lee-Sutherlin denies telling either Mr. Yates or Mr. Strickland about Plaintiff's comments.

---

[4] Plaintiff provides several additional facts related to Mr. Culberson's complaint of racial discrimination.  *See* Pl.'s Resp. to Def.'s UMF ¶ 40.  But because the substance of Mr. Culberson's complaint is not relevant to Plaintiff's retaliation claim, the Court finds it unnecessary to provide a detailed recitation of those facts.

[5] This report of gender discrimination is the subject of Plaintiff's retaliation claim.

Around the same time Ms. Lee-Sutherlin arrived to investigate Mr. Culberson's complaint, the COVID-19 pandemic prompted multiple changes around the Duncan site. For example, Weiser had implemented a mask mandate at Halliburton's request by some point in June 2020.[6] *See, e.g.*, Pl. Dep. [Doc. No. 27-2] at 113:24–25 ("We were mandated to wear these masks."); *id.* at 124:8–18. On June 5, Plaintiff was reminded to wear a mask. *See* Pl. Dep. [Doc. No. 27-2] at 110:22–111:2. That same day, Plaintiff left early to go get a COVID test due to a possible exposure. He told Mr. Yates he had to leave for a personal matter before testing negative for the virus.

Similarly, Halliburton decided to begin implementing temperature checks in early June 2020 for all people entering the Duncan facility. The temperature checks were slated to begin on Monday, June 15. On Monday, June 8, Mr. Yates spent 10–15 minutes "skimm[ing] through" the training with Plaintiff and Justin Chasteen, another day shift security supervisor. Pl. Dep. [Doc. No. 46-1] at 129:3–14. Plaintiff and Mr. Chasteen were then responsible for training other Weiser security guards how to properly conduct temperature checks. Plaintiff trained his security officers in the same manner that Mr. Yates had trained him.

On Wednesday June 10, the same day Plaintiff made his report, Mr. Ford sent Mr. Yates training materials and instructions for conducting temperature checks at the Duncan facility. Plaintiff, Mr. Chasteen, and two other employees were copied on Mr. Ford's email. Later that day, Mr. Yates emailed Weiser supervisors—including Plaintiff and Mr.

---

[6] The parties disagree about when Halliburton implemented a mask mandate. This dispute is not material, so the Court need not address it.

5

Chasteen—reminding them that all officers needed to be properly trained on the temperature check process no later than the following day, June 11.  Mr. Yates immediately sent a second email to Plaintiff and Mr. Chasteen, reminding them to come in at 4:00 a.m. on Monday June 15 "to assist with the temperature checks."  [Doc. No. 27-13] at 1.  The email did not mention anything about additional training over the weekend.  Around the same time he sent this second email, Mr. Yates called Plaintiff "yelling at [him] in a rude way and [] telling [him] that [he] needed to have all this training done."  Pl. Dep. [Doc. No. 27-2] at 136:4–8.

The following day, June 11, Mr. Yates met with Ms. Lee-Sutherlin as part of her investigation into Mr. Culberson's complaint.  She told Mr. Yates that "he was part of the investigation and a complaint."  Lee-Sutherlin Dep. [Doc. No. 46-3] at 37:21–25.  Mr. Yates told her that "a bulk of the issues were coming up" with Plaintiff, and that he believed Plaintiff did not like him.  *Id.* at 79:11–18.

On Friday, June 12, Mr. Yates told Plaintiff and Mr. Chasteen "to retrain everybody" that same afternoon because all of the officers "needed extra training."  Pl. Dep. [Doc. No. 27-2] at 138:23–139:9.  Mr. Yates forwarded his first June 10 email to Mr. Strickland and explained that he sent the email after he learned that "[Plaintiff] hadn't gone over the training" with three of the officers.  [Doc. No. 27-16] at 1.  Mr. Yates claimed he reviewed the list of untrained officers with Plaintiff and instructed him to "make sure that all officers on his shift were capable of performing the duties for the

temperature checks."[7]   *Id.*   Again, this email did not mention anything about additional weekend training the following day.   On or around this same date, Mr. Ford told Mr. Strickland "that he was very upset that the Weiser security guards on site had not been sufficiently trained" to perform the temperature checks ahead of the June 15 rollout.[8] Strickland Dec. [Doc. No. 27-1] ¶ 4.   Mr. Ford also told Mr. Strickland he was unhappy with Plaintiff's failure to wear a mask and promptly report his COVID-19 exposure.  *Id.* ¶ 8; *see also* Lee-Sutherlin Notes [Doc. No. 27-15].

The following day, Saturday June 13, Mr. Yates and Mr. Strickland went to the Halliburton facility to complete temperature check training.   Plaintiff, who usually had Saturdays off, was not present, nor was Mr. Chasteen.   Mr. Strickland believed that Mr. Yates had ordered Plaintiff and Mr. Chasteen to report, so he thought they simply neglected to show up.   To the contrary, Mr. Yates never told either supervisor to attend.[9] Mr. Strickland did not discuss this event with Plaintiff prior to his termination.

Mr. Strickland claims he made the decision to terminate Plaintiff on June 16, 2020, a few days after the Saturday training.   Mr. Strickland cites several reasons for his

---

[7] Plaintiff does not dispute the existence of this email but contends the statements contained within it are false—i.e., that Mr. Yates did not review any list of untrained officers, and Plaintiff did not fail to train officers.

[8] Plaintiff objects to the portions of Mr. Strickland's declaration that include Mr. Ford's statements as inadmissible hearsay.   The Court addresses that issue below.

[9] Plaintiff has proffered evidence that he was never told to attend this training.  *See, e.g.*, Pl. Dep. [Doc. No. 46-1] at 143:23–144:5 ("I was never given any indication to show up that Saturday."). Weiser submits Mr. Yates's notes to show that he had told Plaintiff to show up to the training. But, as discussed below, those notes are inadmissible.   Thus, it is undisputed for summary judgment purposes that Mr. Yates did not tell Plaintiff to attend this training.

decision: (1) Mr. "Ford requested that [Plaintiff] be removed from the Halliburton contract," (2) Mr. Strickland believed Plaintiff had not adequately trained his officers on temperature check procedures; (3) Mr. Strickland believed Plaintiff flouted COVID-19 protocols by failing to wear a mask or promptly report his exposure; (4) Mr. Strickland believed Plaintiff had recent performance problems, including his refusal to do payroll and his choice to send another employee home; and (5) Mr. Strickland believed that Plaintiff skipped the Saturday training without notice.[10]  Strickland Dec. [Doc. No. 27-1] ¶¶ 9–11.

Plaintiff did not receive any written warnings for his behavior prior to his termination.  Although Weiser has a progressive discipline policy, termination is allowed for a single offense where the behavior constitutes "a failure to follow safety rules" or a "gross inattention to duty."  *Id.* ¶ 12.  Mr. Strickland contends that Plaintiff's "egregious actions merited termination under these categories."  *Id.*  Mr. Strickland claims he did not know about Plaintiff's comments to Ms. Lee-Sutherlin when he made the decision to terminate Plaintiff, nor did his decision have any connection to Plaintiff's participation in the investigation of Mr. Culberson's complaint.

### III.   Analysis

After his termination, Plaintiff sued Weiser pursuant to Title VII of the Civil Rights Act of 1964 "for retaliation for reporting and opposing sexual harassment and

---

[10] Mr. Yates filled out Plaintiff's termination form, which reads: "Mike Strickland came in to do terminations for continued performance issues.  Not properly training officers for temperature checks, not coming in to assist with training when told by management."  [Doc. No. 46-22].

gender discrimination."[11]  Compl. [Doc. No. 1] ¶ 3.  Before addressing the substance of Weiser's arguments, the Court addresses Plaintiff's evidentiary challenges to the summary judgment record.

### A.   Evidentiary Issues

Federal Rule of Civil Procedure 56(c)(2) permits a party to "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  When a party challenges the admissibility of an exhibit, "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendments.  In this case, Plaintiff objects to (1) Mr. Yates's notes [Docs. No. 27-8, 27-14, 27-18]; (2) Ms. Lee-Sutherlin's notes [Doc. No. 27-15]; and (3) parts of Mr. Strickland's Declaration [Doc. No. 27-1].  Although the challenges implicate several pieces of evidence and raise numerous legal issues, the parties provide only scant analysis.  Nevertheless, the Court takes each challenge in turn.

### i.   Mr. Yates's Notes

First, Plaintiff challenges the admissibility of Mr. Yates's notes, attached to Weiser's summary judgment motion as Exhibits 8, 14, and 18.  Exhibit 8 apparently contains Mr. Yates's notes of events occurring on June 5, 2020.  *See* [Doc. No. 27-8].

---

[11] The parties seem to dispute whether Plaintiff has also pled a cause of action pursuant to the Oklahoma Anti-Discrimination Act.  *See, e.g.*, Joint Status Rep. [Doc. No. 12] ¶ 1.  Claims under OADA are coextensive with Title VII claims.  *See Green v. JP Morgan Chase Bank Nat. Ass'n*, 501 F. App'x 727, 731 (10th Cir. 2012); *Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017).  Because Weiser is entitled to summary judgment on Plaintiff's Title VII claim, any OADA claim would also fail.

Exhibit 14, purportedly authored by Mr. Yates, describes events that took place between June 8 and June 12. *See* [Doc. No. 27-14]. Exhibit 18 contains (1) an April 21, 2020 email from Mr. Yates to Mr. Strickland detailing issues with Plaintiff, *see* [Doc. No. 27-18] at 1–3; (2) additional notes dated June 4, 2020 and June 19, 2020, *see id.* at 8, 11; and (3) the same notes contained in Exhibits 8 and 14, *see id.* at 4–7, 9–10. Plaintiff contends these exhibits are not properly authenticated and contain inadmissible hearsay.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Authentication challenges can be raised at the summary judgment stage, but courts "do not require an affidavit to authenticate every document submitted for consideration at summary judgment." *Law Co. v. Mohawk Const. & Supply Co.*, 577 F.3d 1164, 1170 (10th Cir. 2009). For example, "documents produced during discovery that are on the letterhead of the opposing, producing party are authentic per se." *Id.*; *see also* Fed. R. Evid. 902 (listing types of evidence which are self-authenticating). Exhibits may also "be sufficiently authenticated taking into consideration the '[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances,' even if they do not appear on [company] letterhead." *Law Co.*, 577 F.3d at 1171 (quoting Fed. R. Evid. 901(b)(4)).

"Although Rule 901 serves an important gatekeeping function, '[t]he bar for authentication of evidence is not particularly high.'" *United States v. Isabella*, 918 F.3d 816, 843 (10th Cir. 2019) (quoting *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir.

10

2007)).  Indeed, "[a]uthentication in the evidentiary sense is not the same as authenticity from a factual standpoint." *United States v. Keogh*, No. CR-17-290-D, 2022 WL 138692, at *1 (W.D. Okla. Jan. 14, 2022).  Once the proponent clears Rule 901's relatively low bar, further challenges about the reliability, importance, or interpretation of the evidence "go to the weight of the evidence—not to its admissibility." *Isabella*, 918 F.3d at 844.

As an initial matter, the record contains no direct evidence from Mr. Yates.  He has provided no affidavit or declaration, nor does it appear that the parties deposed him.  Thus, the notes must be authenticated in some other manner.  Exhibits 8 and 14 contain nothing more than text typed on an otherwise blank page.  They do not appear on Weiser letterhead, nor do they contain any other types of identifying marks to suggest they are in fact Mr. Yates's notes.  The same issues exist with the June 4 and June 19 notes contained in Exhibit 18.  *See* [Doc. No. 27-18] at 8, 11.

Crucially, Weiser does not specifically address the authentication issue.  Instead, it groups all of the challenged evidence together, claiming "[t]he evidence may all be presented in an admissible format via [Lee-]Sutherlin or Strickland's deposition transcripts."  Reply [Doc. No. 54] at 10.  Weiser does not cite either deposition transcript with particularity or explain why these transcripts would be relevant to authenticating notes made by Mr. Yates.  As set forth in Weiser's trial brief, Mr. Yates cannot testify at trial because he suffered a brain injury in a motorcycle accident.  *See* [Doc. No. 38] at 10 (explaining the injury "renders [Mr. Yates] unable to participate due to cognitive and memory impairment and medication use"); *see also* Fed. R. Civ. P. 56(c)(3) (permitting the Court to "consider other materials in the record").

11

At best, Weiser argues the notes "qualify as records of a regularly conducted activity." Reply [Doc. No. 54] at 10 (citing Fed. R. Evid. 803(6)). Although this assertion apparently responds to Plaintiff's hearsay challenge, an exhibit is self-authenticating if it satisfies "the requirements of Rule 803(6)(A)–(C), as shown by a certification of the custodian or another qualified person." Fed. R. Evid. 902(11). But Weiser provides no analysis on why Mr. Yates's notes satisfy the requirements set forth in Rule 806(6)(A)–(C). It does not identify anything in the record to suggest Mr. Yates's notes were "made at or near the time" of the events the notes describe. Fed. R. Evid. 803(6)(A). And although Weiser relies on Ms. Lee-Sutherlin's deposition testimony to show her notes were maintained "as part of her usual practice regarding workplace investigations," it includes no similar assertion as to Mr. Yates's notes. Reply [Doc. No. 54] at 9.

Nor does Weiser provide a certification from a custodian or otherwise qualified person. It claims Mr. Yates's "notes are based on contemporaneous personal knowledge and kept in the course of business," Reply [Doc. No. 54] at 10, but there is nothing in the record to corroborate this assertion. Instead, Weiser points to Mr. Strickland's declaration, in which he claims he "had Mr. Yates make kind of a memo of record, some notes, things like that to kind of keep track of what was going on." Strickland Dep. [Doc. No. 54-2] at 26:23-27:2. But there is no suggestion Mr. Strickland knew that Mr. Yates did in fact keep these notes, or that the challenged exhibits are true and correct copies of those notes. Based on the arguments presented by counsel, Weiser has failed to show

that Mr. Yates's notes are "admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendments.

Finally, the first three pages of Exhibit 18 contain an email purportedly sent from Mr. Yates to Mr. Strickland on April 21, 2020.[12] *See* [Doc. No. 27-18] at 1–3. Weiser has not offered any argument explaining why there is evidence sufficient to support a finding that the email is what it purports to be; its Reply is silent on this point. It is unclear at this juncture whether this exhibit could "be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Because Weiser has the burden to make that showing at the summary judgment stage—and because it has failed to do so— the Court declines to consider the email. *See* Fed. R. Civ. P. 56(c)(2) advisory committee's note to 2010 amendments.[13] The Court therefore sustains Plaintiff's objections to Weiser's Exhibits 8, 14, and 18 on authenticity grounds.

---

[12] As set forth above, Exhibit 18 also contains the notes already included as Exhibits 8 and 14. *See* [Doc. No. 27-18] at 4–7, 9–10. The relevant email exchange took place in April—roughly six weeks before the events described in these notes. Thus, the notes could not have been included as an attachment to the email, and it is unclear why Weiser included them as part of Exhibit 18. In any event, because the Court has already addressed the authenticity issues regarding these notes, it disregards them here.

[13] In any event, the Court would not find the email to be self-authenticating under Rule 901(b)(4). *Cf. Law Co.*, 577 F.3d at 1170–71 (finding error where "district court summarily disregarded [challenged] exhibits" instead of "consider[ing] authentication of each document individually"). The email contains a header, showing details about when and to whom the email was sent, and a signature block with Mr. Yates's signature. While the "From" line shows Joseph Yates's name, it does not show his email address. Weiser does not identify anything in Mr. Strickland's Declaration [Doc. No. 27-1] or deposition testimony [Doc. No. 54-2] that mentions the email, nor does Weiser identify any other evidence in the record that would bear on the email's authenticity. While the email's author appears to be familiar with the people and circumstances associated with those mentioned in Mr. Yates's notes, those notes—as explained above—have not been sufficiently authenticated. While this portion of the exhibit may present a closer call than the completely unmarked notes, the Court is not convinced "[t]he appearance,

13

### ii.    Ms. Lee-Sutherlin's Notes

Next, Plaintiff challenges the admissibility of Weiser's Exhibit 15, which contains Ms. Lee-Sutherlin's notes of her June 16, 2020 phone call with Mr. Ford.  During this phone call, Mr. Ford purportedly expressed his dissatisfaction to Ms. Lee-Sutherlin about the way Plaintiff and Mr. Chasteen trained the other officers.  Plaintiff claims the exhibit contains inadmissible layered hearsay from both Ms. Lee-Sutherlin and Mr. Ford.[14] Weiser argues, *inter alia*, that Plaintiff has "fail[ed] to object that the evidence within the notes and declaration 'cannot be presented in a form that would be admissible in evidence.'" Reply [Doc. No. 54] at 9–10 (quoting Fed. R. Civ. P. 56(c)(2)).  Even if the challenged statements are hearsay as contained in the exhibit, there is no suggestion that their testimony cannot be presented in an admissible form at trial.  To be sure, Weiser has listed both Ms. Lee-Sutherlin and Mr. Ford on its witness list.  *See* Def.'s Witness List [Doc. No. 17]; Final Pretrial Rep. [Doc. No. 41] at 24–25; *see also* Fed. R. Civ. P. 56(c)(3).  Thus, the Court declines to strike Exhibit 15.

### iii.    Mr. Strickland's Declaration

Finally, Plaintiff challenges portions of Mr. Strickland's declaration, which is attached as Weiser's Exhibit 1 [Doc. No. 27-1].  He first argues that portions of the exhibit "contain hearsay recitations of alleged conversations with Mr. Ford." Resp. [Doc.

---

contents, substance, internal patterns, or other distinctive characteristics of the item" are sufficient to self-authenticate the email under the circumstances of this case.  Fed. R. Evid. 901(b)(4).

[14] Because Plaintiff challenges only Ms. Lee-Sutherlin and Mr. Ford's statements, *see* Resp. [Doc. No. 46] at 24, the Court confines its analysis to those portions of the exhibits.

14

No. 46] at 24.  But, as explained above, Weiser has listed Mr. Ford as a witness so this testimony could be presented in an admissible form at trial.  The Court declines to strike these portions of the declaration.

Next, Plaintiff argues the declaration contains inadmissible hearsay statements from Mr. Yates and "unnamed security guards."  *Id.*  The challenged portions of Mr. Strickland's declaration read:

> 6.     I traveled to the Duncan location on Saturday, June 13, 2020, and assisted in training the security guards on the temperature checks.  I spoke with the security guards present.  Several day shift security guards told me that [Plaintiff] had not explained the training to them like he was supposed to, and had just given them a booklet and scanning thermometer.
>
> 7.     [Plaintiff] did not show up to the Saturday training on June 13, 2020.  Plaintiff's supervisor, Joseph Yates, told me that he had instructed [Plaintiff] to be there. . . .
>
> 10.    In addition to the mask [sic], COVID-19 exposure, and temperature check issues, [Plaintiff] had been involved in a string of performance problems, including sending a security guard home without pay when she was less than 5 minutes late (inconsistent with Weiser's policy).  [Plaintiff] had also not been following his supervisor's instructions recently, including an incident in April where [Plaintiff] hung up on Yates and an incident in June when [Plaintiff] refused to do payroll as his supervisor instructed him.

Strickland Dec. [Doc. No. 27-1] at 3.  As previously stated, Weiser's admissibility analysis groups all of the exhibits together.  It makes the blanket assertion that "[t]he evidence may all be presented in an admissible format via Sutherin or Strickland's deposition transcript."  Reply [Doc. No. 54].  It is unclear to the Court why these transcripts would have any bearing on the admissibility of statements allegedly made by Mr. Yates or by unnamed security guards.  Accordingly, those portions of the declaration

are inadmissible hearsay to the extent that Weiser relies on them for the truth of the matter asserted.

Finally, Plaintiff argues Mr. Strickland has failed to demonstrate personal knowledge pursuant to Federal Rule of Evidence 602 with respect to paragraphs 10 and 11 of his declaration. Paragraph 10 is set forth above, and paragraph 11 provides:

> 11. All of these reasons—the failure [to] train security guards on temperature checks, the failure to come in on Saturday to complete the training, the failure to follow COVID-19 safety rules including wearing a mask and notifying of exposure, and the recent performance and attitude issues—led me to believe that [Plaintiff]'s employment should be terminated.

Strickland Dec. [Doc. No. 27-1] ¶ 11. Weiser's Reply does not address the personal knowledge requirement, nor does it cite any portion of Mr. Strickland's deposition testimony with particularity. To be sure, Weiser has not shown that Mr. Strickland has personal knowledge of the underlying facts contained in his declaration—e.g., that Plaintiff *in fact* failed to train security guards or follow safety protocols. But because Mr. Strickland has personal knowledge of his reasons for terminating Plaintiff, the statements are not inadmissible to the extent that Mr. Strickland claims those were his motivations for terminating Plaintiff.

### B.     Title VII Retaliation

Title VII prohibits employers from discriminating against employees who have either "opposed any practice" made unlawful under the statute or "participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff claims Weiser unlawfully retaliated against him "for reporting

16

and opposing [Mr. Yates's] sexual harassment and gender discrimination" during his June 10 conversation with Ms. Lee-Sutherlin.  Compl. [Doc. No. 1] ¶ 3.

Absent direct evidence of discrimination, Title VII retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework.[15]  *Stover v. Martinez*, 382 F.3d 1064, 1070 (10th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  Accordingly, the "employee must first present a prima facie case of retaliation, which then shifts the burden to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action."  *Id.* at 1070–71.  If the employer does so, the burden then "shifts back to the employee to provide evidence showing that the employer's proffered reason is a pretext for discrimination."  *Id.* at 1071.  Because Plaintiff cannot establish his prima facie case, the Court's analysis is confined to the first step.

"Under [the *McDonnell Douglas*] analysis, the plaintiff bears the initial burden of establishing a prima facie case of retaliation."  *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).  To establish his prima facie case, Plaintiff "must show (1) he engaged in protected opposition to discrimination; (2) [his employer] took an adverse employment action against him;[16] and (3) a causal connection exists between the protected activity and the adverse action.  *Fischer v. Forestwood Co.*,

---

[15] Neither party argues that there is direct evidence of discrimination in this case.  The Court, like the parties, applies the *McDonnell Douglas* framework.

[16] Although the parties do not address the second element, it is clear Plaintiff's termination is an adverse employment action.  *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 (10th Cir. 2000).

17

525 F.3d 972, 979 (10th Cir. 2008).  "If the plaintiff does not establish a prima facie case, his entire case fails."  *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012).

Weiser primarily argues that Plaintiff fails at the third step.[17]  Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013).  To establish this element of his prima facie case, Plaintiff "must show that [Weiser] was motivated to terminate his employment by a desire to retaliate for his protected activity."  *Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).  Weiser claims Plaintiff has not established a causal link between his June 10 report of gender discrimination and his termination because there is no evidence that the decisionmaker knew about Plaintiff's protected activity.

Perplexingly, Plaintiff suggests that "knowledge" is immaterial to the causation analysis, arguing instead that the close temporal proximity between Plaintiff's report and his termination is sufficient.  Resp. [Doc. No. 46] at 25 ("Even Defendant's prima facie formulation does not include 'knowledge' as an element at this stage.  The prima facie element only requires timing to establish a causal connection at the summary judgment stage.").  This is plainly not the case for retaliation claims.  *See, e.g.*, *Singh v. Cordle*, 936 F.3d 1022, 1043 (10th Cir. 2019) ("But a plaintiff who seeks to show causation [by temporal proximity] still must present evidence that the decisionmakers *knew* of the protected conduct.");  *Hinds*, 523 F.3d at 1203 ("As a prerequisite to this showing,

---

[17] Weiser halfheartedly argues that Plaintiff did not engage in protected opposition.  *See* [Doc. No. 27] at 15.  The Court assumes without deciding that Plaintiff's report to Ms. Lee-Sutherlin would satisfy the first step.

[Plaintiff] must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity."); *Williams v. Rice*, 983 F.2d 177, 181 (10th Cir. 1993) ("[T]o establish a causal connection, plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity." (quotation omitted)); *Wood v. Handy & Harman Co.*, 318 F. App'x 602, 606 (10th Cir. 2008) ("An essential component of causation is the decisionmaker's knowledge of the protected activity; if knowledge is lacking, then the protected act cannot be said to have caused the adverse employment action."); *Webb v. Level 3 Commc'ns, LLC*, 167 F. App'x 725, 735 (10th Cir. 2006) ("While, as a general rule, temporal proximity may be sufficient to establish a causal connection between the protected activity and the adverse action, we still require a plaintiff to show that the individual who took the adverse action against plaintiff also knew of the employee's protected activity."). The Court therefore rejects the contention that the nine-day period between Plaintiff's report and his termination is—without some indication of knowledge—sufficient to satisfy the causation element of Plaintiff's prima facie case.

As a threshold showing to the causation element, Plaintiff must proffer sufficient evidence so that a factfinder could infer that either (1) Mr. Strickland knew about his complaint of gender discrimination, or (2) Mr. Yates, "the person allegedly harboring discriminatory animus, knew and used Mr. [Strickland], the person who effected the adverse action, 'as a cat's paw to effect . . . h[is] own biased designs.'" *Montes v. Vail*

19

*Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007) (quoting *Young v. Dillon Companies, Inc.*, 468 F.3d 1243, 1253 (10th Cir. 2006)). Plaintiff has made neither showing.

### i.    Mr. Strickland

Ms. Lee-Sutherlin denies telling Mr. Strickland or Mr. Yates that Plaintiff made a report of gender discrimination. *See* Lee-Sutherlin Dep. [Doc. No. 27-10] ¶ 7. Similarly, Mr. Strickland claims he "did not know what [Plaintiff] had told [Ms. Lee-Sutherlin] regarding her investigation into another officer's complaints."[18] Strickland Dec. [Doc. No. 27-1] ¶ 14. To be sure, these statements are not dispositive. To survive summary judgment, however, Plaintiff must "do more than 'merely assert that the jury might' disbelieve the testimony of interested witnesses; he must present his own affirmative evidence of those facts which are contradicted by the interested testimony." *Wood*, 318 F. App'x at 606 (quoting *Anderson*, 477 U.S. at 256–57).

The *Wood* court found the record sufficient to infer knowledge when the plaintiff presented evidence of the "conduct and statements" of the person who knew about the protected conduct. *Id.* at 606–07. Here, Plaintiff presents no similar evidence about Ms. Lee-Sutherlin's conduct that would cast doubt on her statements. *Cf. id.* at 607 (finding sufficient evidence of causation where person with knowledge of protected action "was extremely angry" with plaintiff).

Nevertheless, Plaintiff claims "a jury question as to knowledge may be established by the *opportunity* to have learned of the matter." Resp. [Doc. No. 46] at 26 (citing

---

[18] Plaintiff, the only other party to the conversation, denies telling anyone else about his conversation with Ms. Lee-Sutherlin.

*Anderson v. Phillips Petroleum Co.*, 861 F.2d 631 (10th Cir. 1988); and *Enstrom v. Beech Aircraft Corp.*, 712 F. Supp. 841, 848 (D. Kan. 1989)).   Unlike the cases he cites, however, Plaintiff has not "present[ed] his own affirmative evidence of [] facts which are contradicted by" Ms. Lee-Sutherlin and Mr. Strickland's denials.   *Wood*, 318 F. App'x at 606 (quoting *Anderson*, 477 U.S. at 256–57).

In *Enstrom*, the district court conducted a bench trial and concluded the decisionmaker "exhibited considerable animosity against Plaintiff," and "was no doubt aware that plaintiff had not provided" the company with a written complaint that would have been key in an ongoing EEOC investigation into another employee.   712 F. Supp. at 849.   Similarly, it concluded the decisionmaker could have inferred that the plaintiff refused to make a statement because he was involved in settlement negotiations with regards to the other employee's EEOC claim.   *See id.*

Unlike the decisionmaker in *Enstrom*, however, there is no evidence suggesting that Mr. Strickland harbored animosity toward Plaintiff.   Instead, he speculates that Ms. Lee-Sutherlin could have told Mr. Yates, who could have in turn told Mr. Strickland, about the report.   Plaintiff argues only that Mr. Yates and Mr. Strickland had "been communicating," and that Mr. "Yates had been providing negative information about [Plaintiff]."   Resp. at 26.   But it is not clear how Mr. Yates's conveyance of negative information about Plaintiff—including his purported failures to train guards and to show up for the Saturday training—suggests he told Mr. Strickland about Plaintiff's gender

21

discrimination complaint.[19]   It is undisputed that when Plaintiff reported Mr. Yates's gender discrimination to Mr. Strickland in January 2020, he was given an "officer of the month" award and additional responsibilities, while Mr. Yates lost responsibilities upon his return.

Plaintiff also cites *Phillips Petroleum Co.*, 861 F.2d 631.  In that case, the person who knew about the protected activity testified that he "sometimes communicated adverse job-related information by telephone after he forwarded an employee's name and work history to the hiring locations," and that "he was aware of [plaintiff]'s age discrimination charge" at the relevant time.  *Id.* at 635.  There is nothing in the record to suggest Ms. Lee-Sutherlin had a similar history of sharing information about employees' reports of discrimination.  Plaintiff provides no analysis of how *Phillips Petroleum Co.* applies to the facts of this case beyond the general proposition that "knowledge may be established by the opportunity to have learned of the matter."  Resp. [Doc. No. 46] at 26.  Although he makes the blanket statement that Mr. Yates and Mr. Strickland communicated about his performance, Plaintiff has not articulated how a reasonable factfinder could conclude Mr. Strickland knew about Plaintiff's June 10 report.

### ii.   Mr. Yates

Nevertheless, Plaintiff argues that *Mr. Strickland's* knowledge of the protected activity is inapposite because he simply acted as a cat's paw for Mr. Yates.  Cat's-paw liability "refers to a situation in which a biased subordinate, who lacks decisionmaking

---

[19] This argument also necessarily assumes that Mr. Yates knew about Plaintiff's protected report. As explained below, there is not sufficient evidence in the record for a factfinder to draw this conclusion.

power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006). Although often considered at the pretext stage, "the influence of the biased subordinate [may also] provide[] the causal connection the plaintiff's prima facie case requires, for even though the ultimate decisionmakers weren't biased it was still because of bias that the employee suffered the adverse action." *Lawrence v. Sch. Dist. No. 1*, 560 F. App'x 791, 795 (10th Cir. 2014); *see also Hueston Green v. Garland*, No. 1:21-CV-00087-LF-JMR, 2024 WL 688692, at *9 n.7 (D.N.M. Feb. 20, 2024).

To succeed on a theory of cat's-paw liability at this stage, "[P]laintiff must show that there is a genuine issue of material fact that (1) [Mr. Yates] took action motivated by [retaliatory] animus; (2) [Mr. Yates] intended the action to cause an adverse employment action, and (3) [Mr. Yates]'s actions proximately caused the intended adverse employment action." *Singh v. Cordle*, 936 F.3d 1022, 1038 (10th Cir. 2019). Despite his heavy reliance on the cat's-paw theory, Plaintiff does not discuss these elements with particularity. Instead, he argues more broadly that Mr. Strickland's termination decision hinged on Mr. Yates's false claims about Plaintiff's performance.[20] Specifically, he contends his failure to show up to the Saturday training spurred his termination, even though Mr. Yates never told him to attend. The Court assumes without deciding that

---

[20] To the extent that Mr. Strickland relies on Mr. Ford's dissatisfaction as a reason for termination, Plaintiff argues, that dissatisfaction was similarly informed by Mr. Yates's false reports.

23

evidence about the Saturday training could satisfy the second and third elements of the cat's-paw inquiry. Nevertheless, Plaintiff stumbles at the first step because he proffers no evidence that Mr. Yates was motivated by retaliatory animus.

More fundamentally, Plaintiff has not proffered evidence from which a factfinder could conclude that Mr. Yates *knew* about the protected report. Most of the cited evidence pertains to events that occurred before Plaintiff made his June 10 report. Necessarily, this evidence cannot demonstrate that Mr. Yates harbored a discriminatory animus on the basis of Plaintiff's yet-unmade claim of gender discrimination.[21] Instead, the proffered evidence paints a picture of ongoing tension between Plaintiff and Mr. Yates that arose weeks before the protected action occurred. But Mr. Yates's "alleged prior mistreatment of Plaintiff is not evidence that []he was aware of Plaintiff's formal complaints." *Singh*, 936 F.3d at 1043. "Rather, it is evidence that, even without knowing of Plaintiff's formal complaints, [Mr. Yates] was inclined to" seek Plaintiff's termination "for the slightest reason." *Id.*

For example, Plaintiff contends Mr. "Yates knew at least by June 4 that he was being investigated for gender discrimination and he attributed the investigation to [Plaintiff]." Pl.'s UMF ¶ 1(A). But Mr. Yates was not being investigated for gender discrimination at this time; the relevant investigation was spurred by Mr. Culberson's complaints of racial discrimination. In any event, Plaintiff did not speak with Ms. Lee-

---

[21] Plaintiff had previously made a claim of gender discrimination around January or February 2020, several months before the protected action underlying his retaliation claim. This earlier report is not the basis for his retaliation claim. *See* Compl. [Doc. No. 1] ¶ 10 ("On or around June 10, 2020, Plaintiff participated in protected activity when he" told Ms. Lee-Sutherlin "that Joseph Yates favored women security officers . . . .").

24

Sutherlin until June 10, which is when he reported the gender discrimination at the heart of the retaliation claim. So Mr. Yates's beliefs on June 4—before the protected action occurred—are not relevant to the causation inquiry.[22] Additionally, the fact that Ms. Lee-Sutherlin "told [Mr. Yates] he was part of the investigation and a complaint" is not enough for a reasonable factfinder to infer that she disclosed Plaintiff's report of gender discrimination, which was made as part of an unrelated investigation.[23] Lee-Sutherlin Dep. [Doc. No. 46-3] at 37:21–25.

Plaintiff also relies heavily on Mr. Yates's comment to Plaintiff that the two men needed "to get aligned," and that they "had to start working together, because if [they] weren't going to work together, it was going to be either [Plaintiff's] job or [Mr. Yates's] job." Pl. Dep. [Doc. No. 46-1] at 161:21–162:1. Plaintiff claimed this conversation occurred "like two weeks before [his termination]," again before he engaged in any protected activity.[24] Likewise, at some point Mr. Yates told Plaintiff that "Robert

---

[22] In a footnote, Plaintiff conclusorily claims: "Yates' belief is enough; actual knowledge is not required." Resp. [Doc. No. 46] at 26 n.2. This argument is underdeveloped and insufficient to carry Plaintiff's burden at the prima facie stage.

[23] Similarly, Plaintiff claims Mr. Yates "knew about the investigation and made statements indicating he knew one subject of the investigation was his gender bias." Pl.'s Resp. to Def.'s UMF ¶ 47. But the cited deposition testimony begins by asking what Mr. Yates knew "in the weeks prior to the June 10th interviews" and "shortly before the interviews"—before the protected action occurred. Pl. Dep. [Doc. No. 46-1] at 181:22–182:8.

[24] As set forth in his Response, Plaintiff claims Mr. Yates told him: "I know you complained about me to Robert and Mike, and we better get aligned . . . or it was going to be my job on the line or his [Yates'] job on the line." Pl.'s UMF ¶ 1(B) (citing Pl. Dep. [Doc. No. 46-1] at 161:17–162:8, 198:25–199:19) (alterations in original). This is a glaring mischaracterization of the record. Plaintiff cobbles together part of his own deposition testimony with a question from counsel *posed 35 pages later* to make it appear as if Mr. Yates's comments about getting aligned were tied to Plaintiff's earlier complaints to Mr. Strickland and Mr. Bullock. In fact, counsel's

Bullock . . . had told [Mr. Yates] that [Mr. Yates] was his guy, it didn't matter what happened, they were going to protect him." Pl. Dep. [Doc. No. 46-1] at 162:5–8. But there's no indication this conversation occurred before Plaintiff's protected activity, or that Mr. Bullock had any hand in terminating Plaintiff. Its materiality to the causation analysis is not apparent to the Court, and Plaintiff provides no further clarity.

The Response also highlights Mr. Yates's angry phone call to Plaintiff on June 10.[25] Unlike the evidence previously discussed, the phone call occurred after Plaintiff made his protected report. But it is undisputed that *Mr. Yates* did not meet with Ms. Lee-Sutherlin until the day after this phone call. *See* Pl's UMF ¶ 1(D); [Doc. No. 46-18]. Plaintiff proffers no evidence that Mr. Yates and Ms. Lee-Sutherlin communicated at any point before their June 11 meeting. Accordingly, the mere existence of the phone call is insufficient to allow reasonable factfinder to infer that Mr. Yates knew about Plaintiff's protected report.

Finally, Plaintiff claims Mr. Yates fed Mr. Strickland false negative information about him, including the missed Saturday training. The Saturday training and Mr. Yates's subsequent report to Mr. Strickland both occurred after Plaintiff made his report, and after Mr. Yates met with Ms. Sutherlin. But viewed in the context of the entire

---

question reads: "You don't remember him segueing from, I know you complained about me to Robert and Mike, and we better get aligned. He didn't put it that closely together, did he?" *Id.* at 199:13–16. Plaintiff's response—"Just what I had repeated, that we needed to get aligned or it was going to be my job on the line or his job on the line"—does not create the link that his counsel suggests. *Id.* at 199:17–19. The Court presumes this amalgamation was an oversight and not an attempt to mislead.

[25] It is undisputed that Mr. Yates called Plaintiff to complain that his guards had not been properly trained—the same message Mr. Yates had conveyed by email earlier that day.

26

record, this evidence is not sufficient to suggest that Mr. Yates either knew about the protected report or acted with a retaliatory animus—as opposed to something more benign, like mere dislike.  Accordingly, Plaintiff cannot establish the causation element of his prima facie case, and Weiser is entitled to summary judgment on his retaliation claim.[26]

## IV.   Conclusion

IT IS THEREFORE ORDERED that Weiser's Motion for Summary Judgment [Doc. No. 27] is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's Application to Set Defendant's Summary Judgment Motion for Oral Argument [Doc. No. 60] is DENIED as moot.

IT IS SO ORDERED this 7th day of August, 2024.

_____

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[26] In light of this conclusion, the Court need not address Plaintiff's evidence of pretext.  *See Nealis v. CoxCom, LLC*, 731 F. App'x 787, 791 n.2 (10th Cir. 2018) ("[C]ourts must not conflate evidence tending to cast doubt on the employer's stated reasons for an employment decision with the plaintiff's prima facie burden of establishing an inference of retaliation in the first instance." (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1144 (10th Cir. 2008)).

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JUAN DOMINGUEZ, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No. CIV-21-653-SLP |
| | ) |
| WEISER SECURITY SERVICES, INC., | ) |
| | ) |
|     Defendant. | ) |

## <u>JUDGMENT</u>

Pursuant to the Court's Order entered this same date, judgment is entered in favor

of Defendant Weiser Security Services, Inc.

ENTERED this 7th day of August, 2024.

 

**SCOTT L. PALK**
**UNITED STATES DISTRICT JUDGE**

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| JUAN DOMINGUEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-653-SLP |
| | ) | |
| WEISER SECURITY SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**O R D E R**

Before the Court is the Motion to Alter or Amend the Judgment [Doc. No. 63] filed

by Plaintiff Juan Dominguez.  Defendant Weiser Security Services, Inc. ("Weiser") filed a

Response [Doc. No. 64], and Plaintiff filed a Reply [Doc. No. 67].  The Motion is DENIED.

### I.     Procedural History

Plaintiff filed this action against Weiser, his former employer, "for retaliation for

reporting and opposing sexual harassment and gender discrimination, in violation of Title

VII of the Civil Rights Act of 1964."  Compl. [Doc. No. 1] ¶ 3.  Weiser filed a Motion for

Summary Judgment [Doc. No. 27], arguing Plaintiff had not proffered evidence of

causation at the prima facie stage or evidence of pretext.

The Court agreed with Weiser that Plaintiff failed to proffer sufficient evidence of

causation to support his prima facie case.  *See* Order [Doc. No. 61] at 27.  Specifically,

Plaintiff failed to proffer evidence from which a reasonable factfinder could conclude that

either Mike Strickland (the decisionmaker) or Joseph Yates (Plaintiff's direct supervisor)

knew Plaintiff had engaged in protected activity.  The Court granted the Motion and entered

judgment in Weiser's favor.  *See* [Docs. No. 61, 62].  Plaintiff now asks the Court to vacate its Order and Judgment pursuant to Federal Rule of Civil Procedure 59(e).

## II.      Governing Standard

A party may move "to alter or amend a judgment" within "28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  "Rule 59(e) motions may be granted when 'the court has misapprehended the facts, a party's position, or the controlling law.'"  *Nelson v. City of Albuquerque*, 921 F.3d 925, 929 (10th Cir. 2019) (quoting *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)).

But a party cannot use Rule 59(e) motions "to revisit issues already addressed or advance arguments that could have been raised in prior briefing."  *Id.* (quoting *Servants of the Paraclete*, 204 F.3d at 1012); *see also Ohio Cas. Ins. Co. v. Cloud Nine, LLC*, No. 1:05-CV-88 TC, 2007 WL 45823, at *1 (D. Utah Jan. 4, 2007) ("Courts routinely deny Rule 59(e) motions in which the movant rehashes old arguments, attempts to re-argue more persuasively issues already presented to and addressed by the Court, or tries to take a second bite at the apple.").  "[A] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Torre v. Federated Mut. Ins. Co.*, 906 F. Supp. 616, 618 (D. Kan. 1995) (quoting *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.*, No. 89–1412–C, 1989 WL 159369, at *1 (D.Kan. Dec. 15, 1989), *aff'd*, 124 F.3d 218 (10th Cir. 1997)).

## III.      Analysis

Plaintiff primarily takes issue with the Court's conclusion that he failed to proffer sufficient evidence of knowledge to establish his prima facie case.  As set forth in the

Court's Order, Plaintiff had to show either that Mr. Strickland or Mr. Yates knew about the protected activity to establish his prima facie retaliation claim.[1]  *See* Order [Doc. No. 61] at 19.  He argues that the Court should vacate its Order because of its mistaken "belief that there can be no retaliation until *after* a protected report has been made <u>and</u> until after the actual report is known."  Pl.'s Mot. [Doc. No. 63] at 2 (emphasis in original).

But the Court did not make such a sweeping declaration.  Instead, it acknowledged that a footnote in Plaintiff's Response made a passing reference to Mr. Yates's "belief" and concluded this "argument [wa]s underdeveloped and insufficient to carry Plaintiff's burden at the prima facie stage."[2]  Order [Doc. No. 61] at 25 n.11.  Plaintiff now attempts to elaborate on this argument, contending "Title VII's protections . . . include protection against preemptive retaliation and even retaliation based on mistaken beliefs."  Pl.'s Mot. [Doc. No. 63] at 2.  But the legal standard for Rule 59(e) motions makes clear Plaintiff cannot use a post-judgment motion to bolster an argument expressly rejected as underdeveloped.[3]

---

[1] Plaintiff now concedes that knowledge is "part of the prima facie case," Pl.'s Mot. [Doc. No. 67] at 3, although he took the opposite position in his Response, *see* [Doc. No. 46] at 25 ("Even Defendant's prima facie formulation does not include 'knowledge' as an element at this stage.  The prima facie element only requires timing to establish a causal connection at the summary judgment stage.").

[2] That footnote read, in full: "Yates' belief is enough; actual knowledge is not required.  *Heffernan v. City of Paterson*, 578 U.S. __, ___, 136 S. Ct. 1412, 1418 (2016) (retaliation may be based on a false belief which is contrary to the true facts).  *See also Reich v. Hoy Shoe Co.*, 32 F.3d 361, 368 (8th Cir. 1994) ('[C]ommon sense and experience establish that employers also make employment decisions on what they suspect or believe to be true' even if it is not)."

[3] While Plaintiff's summary judgment response alluded to Mr. Yates's "belief," nowhere does it mention the legal concept of preemptive retaliation.  He cannot raise this argument for the first time now.  *See All W. Pet Supply Co. v. Hill's Pet Prods. Div., Colgate-Palmolive Co.*, 847 F.

Plaintiff also argues the Court went beyond party presentation by considering "the argument that retaliation will not lie until a protected report is actually made." Pl.'s Mot. [Doc. No. 63] at 2. This is both a mischaracterization of the Court's Order and the parties' briefing. First, the Court did not hold that a retaliation claim *necessarily* fails if the adverse action occurs before an employee engages in a protected activity. Instead, the Court (1) concluded Plaintiff failed to proffer sufficient facts to demonstrate knowledge in this case, and (2) declined to consider the underdeveloped legal argument that Mr. Yates's *belief* about the protected report was sufficient.

Second, the parties' briefing clearly teed up the issue of knowledge in the context of Plaintiff's prima facie case. It its Motion for Summary Judgment, Weiser specifically argued Plaintiff failed to establish causation because "Strickland did not know the content of Dominguez's conversation with Sutherlin at the time he made the decision to terminate Dominguez's employment."[4] Def.'s Mot. [Doc. No. 27] at 20. And, indeed, Plaintiff responded to this argument immediately below the heading "The Causal Connection." *See* Pl.'s Resp. [Doc. No. 46] at 25 ("At Prop. II(A), p. 16, Defendant argues that Dominguez must show that Strickland knew of the protected report in order to sustain a retaliation

---

Supp. 858, 860 (D. Kan. 1994) ("[A] motion to alter or amend cannot be used to raise new issues for the first time after entry of summary judgment.").

[4] Weiser's summary judgment briefing repeatedly addressed knowledge. *See* Def.'s Mot. [Doc. No. 27] at 25 ("Dominguez has only speculation that Yates (not Strickland, the decisionmaker) knew of the content of his conversation with Sutherlin and wanted to retaliate against him."); Def.'s Reply [Doc. No. 54] at 2 ("[N]either Yates nor Strickland knew of Dominguez's comments about Yates'[s] favoritism[.]"); *id.* at 7 ("The Response is wrong that 'Yates knew at least by June 4 that he was being investigated for gender discrimination and he attributed the investigation to Dominguez.'").

claim. Even Defendant's prima facie formulation does not include 'knowledge' as an element at this stage.").  Rather than make the argument he now wishes to advance, however, Plaintiff countered that "knowledge does not appear to be part of the prima facie formulation, [but] knowledge may be inferred from the facts presented here."  Pl.'s Resp. [Doc. No. 46] at 26.

After considering the parties' positions, the Court rejected Plaintiff's contention that knowledge was immaterial to his prima facie case.  *See* Order [Doc. No. 61] at 18–19. Similarly, it rejected Plaintiff's argument that the evidence provided would permit the reasonable inference that either Mr. Strickland or Mr. Yates knew about Plaintiff's protected activity.  Thus, the Court did not stray beyond party presentation in determining that Plaintiff's prima facie case failed to permit a factfinder to infer knowledge.  *See United States v. Perez*, 127 F.4th 146, 166 (10th Cir. 2025) ("[T]he party-presentation principle restricts courts from raising new issues.  But if the parties have raised and responded to an issue, this principle does not require a court to render its decision in accordance with the position of one of the parties." (citations and quotations omitted)).

Finally, Plaintiff asserts an argument in his Reply related to the Court's footnote, which summarily rejected his "belief" argument as underdeveloped.  Pl.'s Reply [Doc. No. 67] at 3–4.  But Plaintiff did not even mention the Court's footnote in his Motion, so the Court declines to consider any argument related to it for the first time in Reply.  *See SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1226 (10th Cir. 2009) (recognizing "general rule . . . that a party waives issues and arguments raised [] for the first time" in a reply brief); *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 17-

ML-2792-D, 2018 WL 3676971, at *6 n.6 (W.D. Okla. Aug. 2, 2018) (applying S*CO Group*'s general rule to briefing before district court). Although Plaintiff's footnote argument is raised in reply to an argument Weiser made in its Response, any contentions about the footnote could have been—and, indeed, should have been—raised in Plaintiff's initial Motion to Alter.[5]

### IV. Conclusion

IT IS THEREFORE ORDERED that Plaintiff's Motion to Alter or Amend the Judgment [Doc. No. 63] is DENIED.

IT IS SO ORDERED this 23rd day of April, 2025.

_____

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[5] In any event, the Reply's arguments are unpersuasive. Plaintiff relies heavily on the placement of the Court's footnote but ignores the broader conclusion that Plaintiff "proffer[ed] no evidence that Mr. Yates was motivated by retaliatory animus." [Doc. No. 61] at 24. Plaintiff then attempts to rehash the same argument that Mr. Yates's beliefs about a protected report being made (as opposed to the actual making of a report) were sufficient to establish causation. As explained above, Plaintiff's attempts to develop this argument come too late. The Court also finds Plaintiff's contention that he could not have foreseen or responded to this argument disingenuous. In its Motion for Summary Judgment, Weiser discussed retaliatory animus in the context of the cat's paw theory. It laid out the timeline of events and argued that some Plaintiff's evidence had little value because it occurred before the protected activity. *See, e.g.*, Def.'s Mot. for Summ. J. [Doc. No. 27] at 27 ("One innocuous comment from Yates, the non-decisionmaker, that happened before Dominguez's participation in an HR investigation, simply cannot carry Dominguez to a jury on a retaliation claim with no other evidence.").