**Appeal No.  25-6061**

---

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

---

JUAN A. DOMINGUEZ,

      Plaintiff/Appellant,

v.

WEISER SECURITY SERVICES, INC.,

      Defendant/Appellee.

Appeal No.  25-6061
CIV-2021-653-SLP
(Western District of Oklahoma)

---

On Appeal from the United States District Court
for the Western District of Oklahoma
District Court Case No. CIV-2021-653-SLP
Honorable Scott L. Palk
U.S. District Judge

---

## APPELLANT'S REPLY BRIEF

---

**RESPECTFULLY SUBMITTED THIS 11th DAY OF SEPTEMBER, 2025.**

s/ Mark Hammons
Mark Hammons, OBA No. 3784
HAMMONS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: assistant@hammonslaw.com

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-iii

I. - BACKGROUND OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. - ARGUMENT AND AUTHORITY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1. - ONLY GENERAL KNOWLEDGE OF THE PROTECTED ACT
       IS REQUIRED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    2. - KNOWLEDGE CAN BE SHOWN BY CIRCUMSTANTIAL
       EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        A. - Admissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B. - Timing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        C. - Pretext . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    3. - THE CAT'S PAW DOCTRINE APPLIED IN THIS CASE . . . . . . . . 20

III. - CONCLUSION AND RELIEF SOUGHT. . . . . . . . . . . . . . . . . . . . . . . 23

IV. - STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . 23

V. - CERTIFICATE AS TO THE WORD COUNT OF THE BRIEF. . . . . . . . . . 24

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

### UNITED STATES SUPREME COURT

*Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025) . . . . . . . . . . . . . . . 19

*Anderson v. City of Bessemer City,* 470 U.S. 564 (1985) . . . . . . . . . . . . . . . . . 23

*Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006) . . . . . . . . . . . . . . . . . . . . . . . . 22

*Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003) . . . . . . . . . . . . . . . . . . . . . . . 5

*Hartman v. Moore*, 547 U.S. 250 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Heffernan v. City of Paterson*, 578 U.S. __, ___, 136 S. Ct. 1412 (2016). . . . 9, 12

*Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000) . . . . . . . . . 8, 17, 18

*Tolan v. Cotton*, 572 U.S. 650 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Santos*, 553 U.S. 507 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 5


### UNITED STATES COURTS OF APPEAL

*Adamson v. Multi Cmty. Diversified Servs.*,
514 F.3d 1136 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253 (11th Cir. 2010) . . . . . . . 7

*Anderson v. Coors Brewing Co.*, 181 F.3d 1171 (10th Cir. 1999). . . . . . . . . 13, 14

*Anderson v. Phillips Petroleum Co.*, 861 F.2d 631 (10th Cir.1988) . . . . . . . . . . 18

*Banker v. Gold Res. Corp. (In re Gold Res. Corp. Sec. Litig.)*,
776 F.3d 1103 (10th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164 (10th Cir. 2003) . . . . . . . . . . . . 10

*Bertsch v. Overstock.com*, 684 F.3d 1023 (10th Cir. 2012) . . . . . . . . 17, 18, 19, 20

*Bird v. W. Valley City*, 832 F.3d 1188 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . 3

*Colby v. Klune*, 178 F.2d 872 (2d Cir.1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Dixon v. Okla. ex rel. Reg'l Univ. Sys. of the OK Bd. of Regents*,
125 F.4th 1321 (10th Cir. 2025) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

i

*Guevara v. Best Western Stevens Inn, Inc.*,
78 Fed. Appx. 703 (10th Cir., 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Hardeman v. City of Albuquerque*, 377 F.3d 1106 (10th Cir., 2004) . . . . . . . .  14

*Hennagir v. Utah Dep't of Corr.*,
581 F.3d 1256 (10th Cir. Sept. 10, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107 (9th Cir. 2003) . . . . . . . . .  3

*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187 (10th Cir. 2008) . . . . . . . . .  3

*Keith v. Koerner*, 843 F.3d 833 (10th Cir. 2016) . . . . . . . . . . . . . . . . . . . . . .  14

*Lindsay v. Denver Pub. Sch.*, 88 F.4th 1323 (10th Cir. 2023) . . . . . . . . . . . . .  15

*Mauldin v. Driscoll*, 136 F.4th 984 (10th Cir. 2025) . . . . . . . . . . . . . . . . . . . .  3

*Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304 (10th Cir. 2006) . . . . . . .  17

*Nealis v. CoxCom, LLC*, 731 F. App'x 787 (10th Cir. 2018). . . . . . . . . . . . . 18, 19

*Nobach v. Woodland Vill. Nursing Ctr.*, 799 F.3d 374 (5th Cir. 2015). . . . . .  3, 4

*Poole v. Cnty. of Otero*, 271 F.3d 955 (10th Cir. 2001) . . . . . . . . . . . . . . . . . .  4

*Sauers v. Salt Lake County*, 1 F.3d 1122 (10th Cir. 1993). . . . . . . . . . . . . . 4, 8, 11

*Servants of the Paraclete v. John Does I-XVI*,
204 F.3d 1005 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Swanson v. General Services Administration*,
110 F.3d 1180 (5th Cir.1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14, 15

*Thomas v. City of Blanchard*, 548 F.3d 1317 (10th Cir. 2008) . . . . . . . . . . . . .  4

*Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th Cir. 2008) . . . . . . . . . . . . . . . . . .  13

*United States v. Vann*, 776 F.3d 746 (10th Cir. 2015) . . . . . . . . . . . . . . . . . . . 9

*VanDeWalle v. Leon Cnty. Fla.*, 661 F. App'x 581 (11th Cir. 2016) . . . . . . . . . 4

*Wells v. Colo. Dept. Of Transp.*, 325 F.3d 1205 (10th Cir.2003). . . . . . . . . . . . 17

*Wickman v. Henderson*, 19 F.App'x 740 (10th Cir.2001) . . . . . . . . . . . . . . . . . 15

*Xia v. Salazar*, 503 F. App'x 577 (10th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . 16

ii

## UNITED STATES DISTRICT COURTS

*All W. Pet Supply Co. v. Hill's Pet Prods. Div*.,
847 F. Supp. 858 (D. Kan. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## OTHER AUTHORITY

**PRACTITIONER'S GUIDE TO THE UNITED STATES
COURT OF APPEALS FOR THE TENTH CIRCUIT**
(13TH Ed, Jan. 2025), Section VII(C)(4), p. 43 (WRITING A BRIEF) . . . . . . 9, 10

## I. - BACKGROUND OF THE CASE

Mr. Dominguez was terminated from his employment with Weiser ostensibly by Mr. Strickland, the Branch Manager, Mt.Sum.Judg., DF 1, p. 2, Appx 20, who was acting as a surrogate for Mr. Yates, Mr. Dominguez's supervisor. *Id.*, DF3.

The trial court dismissed Mr. Dominguez's claim, asserting he could not establish a prima facie case for retaliation. The formulation of the prima facie case - a protected act by the employee, an adverse act by the employer, and causation– were not disputed. Nor was it disputed that the first two elements of the prima facie case were established. Only the third prong (causation) was disputed, and that was based on a claimed absence of sufficient knowledge of Mr. Dominguez's protected activity.

Consequently, the central issues on the prima facie case[1] are interrelated questions about what level of knowledge is necessary for the prima facie case, and what kind of evidence is sufficient to prove that knowledge.

Related to this issue is the cat's paw claim of liability, which centers on the actions of Mr. Yates– Mr. Dominguez's immediate supervisor. The cat's paw theory will be addressed separately, but the prima facie discussion applies fully to both Strickland's and Mr. Yates' actions.

Mr. Dominguez will address each issue in turn.

---

[1] There is a second issue regarding whether the claimed decisionmaker Strickland was acting as the 'cat's paw' for Mr. Yates in carrying out the retaliation. That will be addressed after showing that prima facie case was established.

## II. - ARGUMENT AND AUTHORITY

In support of his appeal, Mr. Dominguez sets out the following arguments and authority in reply to the Appellee's Answer Brief.

### 1. - ONLY GENERAL KNOWLEDGE OF THE PROTECTED ACT IS REQUIRED

Weiser does not deny its decisionmakers had *some* knowledge relevant to Dominguez's protected activities. Weiser has admitted that Strickland and Yates knew there was an investigation into a complaint of prohibited discrimination,[2] and both knew knew Dominguez was interviewed as part of that investigation. Answering questions regarding discrimination during an internal investigation is, of course, a protected activity. *Dixon v. Okla. ex rel. Reg'l Univ. Sys. of the OK Bd. of Regents*, 125 F.4th 1321, 1339, 1440 (10th Cir. 2025).

Weiser argues, and the trial court held, that the decisionmaker must have knowledge of the *substance* of the employee's protected act. Essentially, the trial court held that if Mr. Strickland or Mr. Yates did not know what Dominguez said during the discrimination investigation, they did not have sufficient knowledge to satisfy the causation prong of the *prima facie* case. The trial court made this holding despite the fact that Yates claimed he knew Dominguez was making a report of gender discrimination against him. Sum.Judg.Order, p. 25-26 & fn 23, Appx 489-491 & fn 23 (quoted at length below).

Respectfully, this Circuit has not (to counsel's research) ever required this level

---

[2] The actual complaint brought by Mr. Culbertson was of racial discrimination.

of knowledge. This Court's decisions have consistently focused on whether an employee can "come forward with evidence from which a reasonable factfinder could conclude that [the decisionmaker] had knowledge of [the employee's] protected activity." *Mauldin v. Driscoll*, 136 F.4th 984, 995 (10th Cir. 2025) (internal citations omitted). *Accord Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("Mr. Hinds must first come forward with evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity.") If the employer knew or believed that the employee answered questions about discrimination, that would seem to be sufficient knowledge that the employee engaged in a protected act, as the prima facie case imposes only a "*de minimis*" burden. *Cf. Bird v. W. Valley City*, 832 F.3d 1188, 1200 (10th Cir. 2016):

> The parties may dispute whether and how Buckner confronted her about the protected activity, but Mauldin has provided sufficient evidence to demonstrate that Buckner at least knew about such activity. See Aplt. App. II at 76 (declaring that Buckner was 'aware' of her EEO activity). And indeed, '[w]e examine "the record and all reasonable inferences that might be drawn from it in the light most favorable"' to Mauldin, as the party opposing summary judgment. . .

*Mauldin*, 136 F.4th, at 995 (internal citations omitted). *See Hernandez v. Spacelabs Med., Inc.*, 343 F.3d 1107, 1113 (9th Cir. 2003) ("Hernandez provided sufficient evidence from which a reasonable jury could *infer* both that Pray either knew *or suspected* that Hernandez had reported the alleged harassment to Lasher, and that there was a causal connection between this knowledge *or suspicion* and Hernandez's termination." Emphasis supplied). *See also Nobach v. Woodland Vill. Nursing Ctr*., 799 F.3d 374, 379 (5th Cir. 2015) (If there were "any evidence that Woodland knew, suspected, or reasonably should have known the cause for her refusing this task was

-3-

her conflicting religious belief—and that Woodland was motivated by this knowledge or suspicion—the jury would certainly have been entitled to reject Woodland's explanation for Nobach's termination.").

Tenth Circuit precedent has recognized that a retaliation claim is actionable even though the Defendant did **not** know the substance of the complaint. In ***Sauers v. Salt Lake County***, 1 F.3d 1122 (10th Cir. 1993), this Circuit sustained a retaliation claim based on the employer's "fear that a sexual harassment complaint might soon be filed by the plaintiff." ***Id.***, 1 F.3d, at 1128. Obviously, the employer could not know the substance of a complaint which had not yet been filed, but the general expectation of what might be filed was enough. ***See also Poole v. Cnty. of Otero***, 271 F.3d 955, 961 (10th Cir. 2001) (First Amendment retaliation could be based on retaliation for the *anticipated* filing of a lawsuit), and ***Thomas v. City of Blanchard***, 548 F.3d 1317, 1327 (10th Cir. 2008) (retaliation based on a *threat* to report information to law enforcement was actionable). In both ***Poole*** and ***Thomas***, there could be no specific knowledge of the protected act because it had not yet occurred. Nonetheless, those defendants had enough general knowledge of the *expected* action to recognize that such action would be protected. That was enough, and should have been enough here. "***Alvarez v. Royal Atl. Developers, Inc.,*** 610 F.3d 1253, 1266 (11th Cir. 2010) [states], in a Title VII case, that when assessing the employer's motive, '[t]he inquiry . . . centers on the employer's belief, not the employee's beliefs and, to be blunt about it, not on reality as it exists outside the decision maker's head'" ***VanDeWalle v. Leon Cnty. Fla.***, 661 F. App'x 581, 587 (11th Cir. 2016).

Here, there was sufficient evidence to allow a jury to find that Mr. Dominguez

-4-

was fired because Yates and Strickland knew he had been interviewed in a discrimination investigation, and Yates believed Dominguez reported that Yates engaged in gender discrimination. Sum.Judg.Order, p. 25-26 & fn 23, Appx 489-491 & fn 23. Even if Strickland and Yates did not know precisely the substance of the information he had provided, it was specifically anticipated by Mr. Yates that Dominguez was going to bring forward a gender discrimination complaint. *Id.*

However, there is additional evidence in terms of both timing and pretext providing circumstantial evidence of knowledge.

**WHEREFORE**, the trial court's Order granting summary judgment, denying the Rule 59(e) motion, and entering judgment for the Defendant must be reversed.

## 2. - KNOWLEDGE CAN BE SHOWN BY CIRCUMSTANTIAL EVIDENCE

"Knowledge must almost always be proved" by circumstantial evidence. *United States v. Santos*, 553 U.S. 507, 521 (2008). The Supreme Court has "never questioned the sufficiency of circumstantial evidence in support of a criminal conviction, even though proof beyond a reasonable doubt is required." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003).

In the employment discrimination context, three kinds of evidence are commonly used for this proof:

a)    admissions,

b)    timing, and

c)    pretext.

All three of these pieces of evidence are present in this case, although the "motive/belief" prong applies primarily to the actions of Mr. Yates.

### A. - Admissions

Mr. Yates, Dominguez's immediate supervisor, made many substantive admissions to Dominguez claiming knowledge as to who had initiated the investigation, the subject of the investigation, and Mr. Domginuez's role in the investigation. In addition to this claimed knowledge, Yates made not-so-veiled threats against Mr. Dominguez if Dominguez did not align with him.

In its Answer Brief, Weiser argues that Yates had no actual knowledge of Dominguez's acts. Ans.Bf, Prop. A(ii), p. 34-35. This argument disregards Yates' statements on the basis that Yates could not have known in advance what Dominguez would ultimately report.

Similarly, the trial court accepted that Yates made these statements, but then distinguished them away, because Yates could not actually 'know' these things before Dominguez was interviewed:

> . . . Plaintiff contends Mr. 'Yates knew at least by June 4 that he was being investigated for gender discrimination and he attributed the investigation to [Plaintiff].' Pl.'s UMF ¶ 1(A). But Mr. Yates was not being investigated for gender discrimination at this time; the relevant investigation was spurred by Mr. Culberson's complaints of racial discrimination. In any event, Plaintiff did not speak with Ms. Lee-Sutherlin until June 10, which is when he reported the gender discrimination at the heart of the retaliation claim. So Mr. Yates's beliefs on June 4—before the protected action occurred—are not relevant to the causation inquiry. Additionally, the fact that Ms. Lee-Sutherlin 'told [Mr. Yates] he was part of the investigation and a complaint' is not enough for a reasonable factfinder to infer that she disclosed Plaintiff's report of gender discrimination, which was made as part of an unrelated investigation. [fn 23] Lee-Sutherlin Dep. [Doc. No. 46-3] at 37:21–25.

> [fn 23] Similarly, Plaintiff claims Mr. Yates "knew about the investigation and made statements indicating he knew one subject of the investigation was his gender bias." Pl.'s Resp. to Def.'s UMF ¶ 47. But

the cited deposition testimony begins by asking what Mr. Yates knew "in the weeks prior to the June 10th interviews" and "shortly before the interviews"—before the protected action occurred. Pl. Dep. [Doc. No. 46-1] at 181:22–182:8.

Plaintiff also relies heavily on Mr. Yates's comments to Plaintiff that the two men needed 'to get aligned,' and that they 'had to start working together, because if [they] weren't going to work together, it was going to be either [Plaintiff's] job or [Mr. Yates's] job.' Pl. Dep. [Doc. No. 46-1] at 161:21–162:1. Plaintiff claimed this conversation occurred 'like two weeks before [his termination],' again before he engaged in any protected activity. Likewise, at some point Mr. Yates told Plaintiff that 'Robert Bullock . . . had told [Mr. Yates] that [Mr. Yates] was his guy, it didn't matter what happened, they were going to protect him.' Pl. Dep. [Doc. No. 46-1] at 162:5–8. But there's no indication this conversation occurred before Plaintiff's protected activity, or that Mr. Bullock had any hand in terminating Plaintiff. Its materiality to the causation analysis is not apparent to the Court, and Plaintiff provides no further clarity.

Sum.Judg.Order, p. 25-26 & fn 23, Appx 489-491 & fn 23 (other footnotes omitted).

Here, the trial court made two fundamental errors. First, the trial court weighed Mr. Yates' statements and refused to credit them because they were predictive rather than factual, and, in part, objectively wrong. But right or wrong, those 'facts' were the ones Yates was acting on: "[T]he inquiry . . . centers on. . . not on reality as it exists outside the decision maker's head," but only on what Yates believed. *Alvarez v. Royal Atl. Developers, Inc.,* 610 F.3d 1253, 1266 (11th Cir. 2010).

Mr. Yates may have gotten certain immaterial facts wrong,[3] but so what? He believed he had knowledge, and the knowledge that he professed to have was more than sufficient to satisfy the prima facie case.

_____

[3] He was wrong about who initiated the investigation, and about the subject of the initial complaint, but he was right in predicting that Dominguez was going to report his gender discriminatory conduct.

Indeed, the trial court did not explain why these remarks were "not relevant to the causation inquiry" merely because they preceded the actual protected activity. Weiser argues– without citation to authority[4]– that such statements cannot be viewed as relevant even though they set out the motive for action.  In this regard, the evidence offered is very similar to that offered in *Sauers* and found to be significant:

> Plaintiff had not yet taken any action against which [the supervisor] could retaliate, but the tape-recorded conversation [] indicates his fear that a sexual harassment complaint might soon be filed by plaintiff.

*Sauers, supra*, 1 F.3d, at 1128.

As in *Sauers*, Mr. Yates' expressed beliefs and fears are relevant because they explain why Mr. Yates would make up false complaints in order to get Mr. Dominguez fired.  Failing to credit the evidence of claimed knowledge by deciding that Yates was wrong about what he knew serves to ignore the import of the statements as proof of motive.  This is the error addressed in *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 152-153 (2000) where the Court reversed summary judgment because:

> [T]he court disregarded critical evidence favorable to petitioner -- namely, the evidence supporting petitioner's prima facie case and undermining respondent's nondiscriminatory explanation. . .  The court also failed to draw all reasonable inferences in favor of petitioner. For instance, while acknowledging 'the potentially damning nature' of Chesnut's age-related comments, the court discounted them on the ground that they 'were not made in the direct context of Reeves's termination.' . . .

Yates repeatedly told Dominguez that he "knew" about Dominguez's involvement and "knew" that the investigation was on Yates' gender bias.

---

[4]  Answer Brief, p. 44-45.

Sum.Judg.Order, p. 25-26 & fn 23, Appx 489-491 & fn 23.  The trial court did not

explain why such belief and fears were not relevant proof causation, as Dominguez

argued.  See Dominguez's Sum.Judg.Resp., p. 22 & fn 2 (Appx 194):

> . . .Yates knew or believed that Mr. Dominguez was both the source and
> conduit for complaints about Yates' discrimination. . .
>
> \*      \*      \*
>
> [fn 2] Yates' belief is enough; actual knowledge is not required.
> ***Heffernan v. City of Paterson***, 578 U.S. __, ___, 136 S. Ct. 1412, 1418
> (2016) (retaliation may be based on a false belief which is contrary to
> the true facts)*.  **See also Reich v. Hoy Shoe Co.***, 32 F.3d 361, 368 (8ᵗʰ
> Cir. 1994) ("[C]ommon sense and experience establish that employers
> also make employment decisions on what they suspect or believe to be
> true" even if it is not).

The trial court erred in refusing to consider this argument and authority,

asserting that "[t]his argument is underdeveloped and insufficient to carry Plaintiff's

burden at the prima facie stage."  SJ Order, p. 25 fn 22, Appx 490.  Dominguez's

argument that belief was sufficient is not a novel proposition, nor should it require

much discussion.  An employee may "rel[y] on a string of reasonable inferences. . .

to show [defendant's] state of mind and knowledge. . . [T]his tactic is as

uncontroversial as it is ubiquitous."  ***United States v. Vann***, 776 F.3d 746, 760-761

(10th Cir. 2015).

While counsel has not found a Tenth Circuit case specifically describing the

line between an 'adequate' argument and an 'inadequate' argument, this Court's

guidance to practitioners suggests that the adequacy of an argument is determined by

its content and context rather than its length:

> . . .A few good cases on point, with sufficient discussion to show that
> they are relevant, are much preferred over a flurry of string citations.
> Quotations should be used sparingly. If a case is worth citing, it usually

has a quote which will drive the point home, and one or two good cases are ordinarily sufficient. If the cited case lacks a good quote, a terse summary will establish it as a case the court should read. A long discussion of the facts of the cited cases is usually unnecessary, except when a precedent is so closely on point that it must be distinguished if the party is to prevail.

**PRACTITIONER'S GUIDE TO THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT** (13TH Ed, Jan. 2025), Section VII(C)(4), p. 43 (WRITING A BRIEF).

Counsel sought reconsideration of the trial court's holding (Mt. Reconsider, Appx 494-499, Reply 508-513), however, the court again refused to consider the matter. Rule 59 Order, Appx 514-519. The court found the arguments in the motion unpersuasive, and also stated that the discussion of the footnote should have been made in the initial motion, even though this specific discussion was in response to Weiser's arguments. Rule 59 Order, p. 6, Appx 519. A party's reply brief may, however, address arguments raised in an answer brief. ***Beaudry v. Corr. Corp. of Am.***, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003) and ***Banker v. Gold Res. Corp. (In re Gold Res. Corp. Sec. Litig.)***, 776 F.3d 1103, 1119 (10th Cir. 2015).

Furthermore, Dominguez's Rule 59 motion focused on the substantive argument which the Court claimed was 'underdeveloped,' i.e. such statements are evidence of causation because they explain why Yates acted the way he did.

Mr. Dominguez pointed out that the Court's apparent belief that there could be no retaliation until after the protected act was a substantive argument that neither party had raised. Rule 59 Motion, p. 2, Appx 495. Indeed, the Court's decision appeared to be raised *sua sponte* in violation of the party presentation rule. ***Id.***

-10-

Nonetheless, Dominguez argued in detail that the Court was substantively wrong in disregarding the rule that an actor's belief is the functional equivalent of knowledge. *Id.*, pg. 2-6, Appx 495-499. The trial court refused to reconsider its holding because "the legal standard for Rule 59(e) motions makes clear Plaintiff cannot use a post-judgment motion to bolster an argument expressly rejected as underdeveloped." Rule 59 Order, p. 3, Appx 516.[5] But even on reconsideration, the trial court misread Dominguez's argument. The trial court stated:

> While Plaintiff's summary judgment alluded to Mr. Yates's 'belief,' nowhere does it mention the legal concept of preemptive retaliation. He cannot raise this argument for the first time now. . .

Rule 59 Order, p. 3 fn 3, Appx 516.

Mr. Dominguez was **not** raising a 'new' preemptive retaliation theory, because here the retaliation was not preemptive– it took place *after* Dominguez had made his report. Dominguez raised *Sauers* because that case illustrated that evidence of an actor's *beliefs* which showed motive was sufficient to sustain a retaliation claim. This was the same argument made originally. The Rule 59 motion elaborated on that very same point and demonstrated that the trial court's application of the knowledge

---

[5] The trial court cited to *All W. Pet Supply Co. v. Hill's Pet Prods. Div*., 847 F. Supp. 858, 860 (D. Kan. 1994), which does not actually contain that language. *Pet Supply* does state that a Rule 59 motion may not be used to "rehash arguments previously considered and rejected," *id*, but it also says "[a]ppropriate grounds for a motion to reconsider include the obvious misapprehension by the court of a party's position. . . or the law[.]" When, as here, the Court simply refused to consider the argument (as opposed to rejecting it), one would think that would fit within *Servants*' statement that Rule 59 can be used to "to correct clear error or prevent manifest injustice."

requirement was substantively wrong.  Rule 59 Motion, Appx 494-499 and Rule 59 Reply, Appx 508-512. Respectfully, ***Servants of the Paraclete v. John Does I-XVI***, 204 F.3d 1005, 1012 (10th Cir. 2000) explains that reconsideration is proper "to correct clear error or prevent manifest injustice."  Here, the Court's refusal to consider evidence of Mr. Yates' statements of belief and motive, and to give those statements appropriate weight, represented "clear error" even if the original arguments were 'underdeveloped.'

Quite naturally, Weiser asks this Court to disregard its own precedent by relying on the trial court's conclusion that an argument about belief evidence was 'underdeveloped' at the summary judgment level.  Ans.Bf, Prop. V(A)(iv), p. 38-40. Notably, this argument is unsupported by any case law at all.

The Court surely understood that Yates' statements that he "knew" about Dominguez's involvement in the discrimination investigation and "knew" that the investigation was on Yates' gender bias were at the least statements of belief. Sum.Judg.Order, p. 25-26 & fn 23, Appx 489-491 & fn 23.  Why wouldn't an argument that those beliefs were enough be sufficient, when it was supported by citing to controlling Supreme Court precedent (***Heffernan***) and a quotation from a circuit court explaining why beliefs were enough.

Respectfully, this argument was not waived, and proper consideration requires reversal of the trial court's summary judgment and Rule 59 Orders, as well as reversal of the judgment in favor of the Defendant.

### B. - Timing

There is no dispute that close timing is present in this case.  Mr. Dominguez

-12-

was interviewed by Weiser's HR official regarding the discrimination investigation on June 10, and he was fired just nine days later on June 19. On June 11, during his interview, Yates focused his complaints on Dominguez. Sum.Judg.Ans., PF1(D), p. 11, Appx 183. On June 12, Yates made a false report to Strickland that Domginuez had failed to train guards. Sum.Judg.Ans., PF1(F), p. 12, Appx 184. On June 13, Yates lied to Strickland, claiming that Dominguez had missed a training session he had supposedly been ordered to attend. Sum.Judg.Ans., PF1(G), p. 12-13, Appx 184-185.

This, of course, satisfies the standard timing requirement in that the protected act and the adverse action are less than six weeks apart. *See Trujillo v. PacifiCorp*, 524 F.3d 1149, 1157 (10th Cir. 2008) and *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999).

Admittedly, timing alone is not sufficient when there is no evidence that the decisionmaker(s) had knowledge of the protected activity. Here, of course, both Strickland and Yates *did know* that Dominguez was interviewed in the investigation into the discrimination complaint, and Yates believed Dominguez was reporting sexual misconduct. In employment discrimination "[t]he cases have simply taken the evidence of the motive and the discharge as sufficient for a circumstantial demonstration that the one caused the other." *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977) and *Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252, 270, n. 21 (1977)).

There is a logical reason for such a holding. When two events occur closely

together in time, the explanations will normally be either that the timing was coincidental or that the events were connected.  Deciding between those choices is a jury function.  "[T]he weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge when ruling on a motion for summary judgment." *Keith v. Koerner*, 843 F.3d 833, 852 (10th Cir. 2016) (internal quotation marks omitted).

This Court has "held that 'timing can be circumstantial evidence of retaliatory intent.'" *Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1120 (10th Cir., 2004) (quoting *Poole v. County of Otero*, 271 F.3d 955, 961 (10th Cir. 2001)).  In evaluating such evidence, "[t]he date of Plaintiff's termination is key to this inquiry because the closer it occurred to the protected activity, the more likely it will support a showing of causation." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir., 1999).  From this, it follows that when events are *very close in time*, a jury may infer from timing alone that the two events are related.  In other words, "there may be an exception to this general rule [that temporal proximity alone is insufficient to show pretext] when the adverse action occurs on the heels of protected activity, [but] such a circumstance would be limited to matters occurring within days, or at most, weeks of each other." *Hennagir v. Utah Dep't of Corr*., 581 F.3d 1256, 1266 (10th Cir. Sept. 10, 2009) (agreeing with and quoting *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 549 (7th Cir. 2008)).

Again, the facts of this case fall within the parameters where timing alone should serve as proof of the causation prong.  At the least, in the face of such close timing, the employers must "offer[] a legitimate, nondiscriminatory reason that

explains **both** the adverse action and the timing." **Swanson v. General Services Administration**, 110 F.3d 1180, 188 (5th Cir.1997)(emphasis supplied)).

Here, Weiser's explanation was Mr. Dominguez's purported failure to attend a June 13 training exercise. That explanation was the supposed 'straw the broke the camel's back.' Sum.Judg, DF50, p. 12, Appx 30; Sum.Judg.Ans., PF1(K), p. 13, Appx 185. This was clearly pretextual in that the undisputed summary judgment evidence is that no such instruction was given. See SJ Order, p. 7 fn 9, Appx 472.

Admittedly, Mr. Dominguez has no direct evidence that Yates conveyed his claimed knowledge to Mr. Strickland; however, Weiser does not deny that there was ample opportunity to convey that information to Mr. Strickland. Weiser argues, Ans Bf, p. 37, 42, that the opportunity to have learned of the information is insufficient, citing primarily to **Lindsay v. Denver Pub. Sch**., 88 F.4th 1323, 1328 (10th Cir. 2023) and **Wickman v. Henderson**, 19 F.App'x 740, 742-43 (10th Cir.2001). Those cases are distinguishable in that it is admitted that Mr. Yates extensively communicated with Mr. Strickland in procuring Dominguez's termination. As set forth several times, Yates believed[6] Dominguez was responsible for the investigation and had reported Yates' gender bias. Yates had threatened Dominguez and also stated that management would protect him (Yates). Sum.Judg.Answer, PF10, p. 15-16, Appx 187-188; SJ Order, p. 25-26, Appx 490-91. Indeed, deciding to fire Dominguez

---

[6] Weiser argues, Ans Bf, p. 42, that there is no evidence that Yates believed Dominguez was reporting on him. To the contrary, Yates said he 'knew' Dominguez was taking these actions, and the fact that Yates expressed this before Dominguez had acted does not change either Yates' beliefs or his motive.

before talking to him at least suggests that an improper motive had already been conveyed to Stickland.  Sum.Judg.Ans, PF1(H), p. 13, Appx 185.

**WHEREFORE**, the trial court erred in holding that the causation element was not established because of the exceptionally close timing of the protected act and the retaliation that followed.

### C. - Pretext

Apart from timing, the evidence of pretext should have been considered in determining that causation was present.  "[T]emporal proximity is only 'one of several ways of proving or disproving causation.'"  *Xia v. Salazar*,[7] 503 F. App'x 577, 580 (10th Cir. 2012) (summarizing *Kelley v. City of Albuquerque*, 542 F.3d 802, 819 n.17 (10th Cir. 2008)).

*Xia, id.*, explains:

> . . . Indeed, we look at all evidence of retaliatory motive to support a causal connection, including pretext evidence 'typically considered in a later phase of the McDonnell Douglas analysis.' *Wells*, 325 F.3d at 1218; *see also Mickelson v. New York Life Ins. Co.*, 460 F.3d 1304, 1316-17 (10th Cir. 2006) (using pretext evidence where timing alone does not support inference of causation).

*Accord Guevara v. Best Western Stevens Inn, Inc*., 78 Fed. Appx. 703, 705 (10th Cir., 2003)[8] ("In evaluating the causal-connection element of a prima facie retaliation claim, we consider the employer's proffered reasons for its actions. . . as well as the timing of the adverse action.")

The reason why pretext is considered at the causation stage is explained in

---

[7]  *Xia* is cited as an accurate summary of Tenth Circuit precedent.

[8]  Cited for its persuasive value.

-16-

***Wells v. Colo. Dept. Of Transp***., 325 F.3d 1205, 1218 (10th Cir.2003):

> . . . When evidence indicates that an employer's proffered reason for taking an adverse action is false, a factfinder can decide that the employer was lying to conceal its true unlawful purpose. . .retaliatory motive,'. .

***See Mickelson v. New York Life Ins. Co.***, 460 F.3d 1304, 1317 (10th Cir. 2006) (applying this to retaliation prima facie cases).  In short, "the factfinder is entitled to consider a party's dishonesty about a material fact as ***affirmative evidence*** of guilt." ***Reeves v. Sanderson Plumbing Prods***., 530 U.S. 133, 147 (2000).

Thus, the trial court "erred in refusing to consider pretext in determining there was no evidence of a causal connection between [the] complaints . . . and [Dominguez's] termination." ***Bertsch v. Overstock.com***, 684 F.3d 1023, 1029 (10th Cir. 2012).

This is particularly true in that the claimed defect in Dominguez's evidence was that it did not show knowledge of the protected report.  Guilty knowledge is precisely what pretext shows, therefore it would supply the supposedly missing evidence.  It is critically important to consider pretext when a lack of knowledge is being claimed.

Dominguez argued that "causation in this case is established by Strickland's reliance on the reasons fabricated by Yates in retaliation for Dominguez's reports of Yates' discrimination."  Plf Sum.Judg.Ans.Bf,, RDF50-51, RDF 52-53, PF1(J), p. 7-10, p. 13, p. 23-26, Apdx 179-182, 185, 195-198.

In this regard, pretext evidence serves to show **both** Strickland's knowledge **and** Yates' knowledge.

In its Answer Brief, Prop. V(A)(i), (ii), p. 30-34, p. 35-38, Weiser argues that

there is no direct evidence that either Dominguez's report or Yates' knowledge was conveyed to Strickland. While true, that is not dispositive,[9] because such knowledge can be shown circumstantially even when the involved parties deny it.

As discussed previously, pretext serves as affirmative evidence of guilt. ***Reeves v. Sanderson Plumbing Prods***., 530 U.S. 133, 147 (2000). Here, Dominguez was a successfully performing officer with no prior discipline. Sum.Judg.Ans, RDF50-52, p. 7, Appx 179. Nonetheless, Strickland made the decision to fire Dominguez without even talking to him. Sum.Judg.Ans, PF1(H), p. 13, Appx 185. At the same time, Strickland was in close contact with Yates, who was providing information negative to Dominguez. Sum.Judg.Ans, PF1(F),(G), (I), (J) & (L), p. 12-14Appx 184-186. It would not be unreasonable to infer that Strickland failed to investigate the allegations against Dominguez because he already knew Yates' true motive. ***Anderson v. Phillips Petroleum Co***, 861 F.2d 631 (10th Cir.1988).

As to Yates, his knowledge and motivation were self-confessed. Further, the trial court recognized that pretext is evidence of causation, SJ Order, p. 23, p. 27 fn 26; Appx 488. 492, but, relying on *dicta*, in a footnote of the non-precedential decision in ***Nealis v. CoxCom, LLC***, 731 F. App'x 787, 791 n.2 (10th Cir. 2018), the district court declined to consider the evidence of pretext as demonstrating causation. SJ Order, p. 23, p. 27 fn 26; Appx 488, 492. Of course non-precedential *dicta* cannot supercede contrary precedent, but more to the point, ***Nealis*** described a limited exception to ***Bertsch*** and ***Wells*** which does not apply here.

---

[9] As acknowledged in the Order granting summary judgment, p. 20, Appx 485.

Weiser, of course, argues the trial court was correct to disregard evidence of pretext to supply any missing knowledge component of the prima facie case. Ans.Bf, Prop. V(B)(ii), p. 46-48. Other than relying on *Nealis*, Weiser's only other citation is to *Adamson v. Multi Cmty. Diversified Servs.*, 514 F.3d 1136 (10th Cir. 2008), which is inapplicable because of its factual and legal distinctions:

> While we understand the utility of district courts skipping the prima facie inquiry on motions for summary judgment in order to proceed directly to the question of pretext, we believe the approach ill-applied in the context of *reverse discrimination claims, where heightened standards are necessary for a prima facie showing*[10] . . .

*Id.*, at 1144 (emphasis supplied).

Going back to *Nealis*, that decision stated "[w]e have also held that courts must not conflate evidence tending to cast doubt on the employer's stated reasons for an employment decision with the plaintiff's prima facie burden of establishing an inference of retaliation in the first instance." *Id.*, 731 F. App'x, at 791 n.2. In *Nealis,* there was a four month gap between the protected act and the claimed retaliation, which is insufficient to suggest that the two matters were related. Moreover, pretext evidence would not explain why that defendant would wait four months to retaliate. Since pretext would not, in *Nealis*, show the connection between the protected activity and the retaliation, it was arguably proper to disregard that evidence.

Here, however, the six to nine day gap is *very* close, such that pretext does explain why the adverse action was motivated by retaliation. Thus, as in *Bertsch,*

---

[10] This portion of the opinion has been superceded by *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303 (2025).

-19-

the trial court "erred in refusing to consider pretext in determining there was no evidence of a causal connection between [the] complaints . . . and [Dominguez's] termination." *Id.*, 684 F.3d, at 1029.

**WHEREFORE**, the trial court erred by refusing to consider pretext as satisfying the third (causation) prong of the retaliation prima facie case.

### 3. - THE CAT'S PAW DOCTRINE APPLIED IN THIS CASE

Weiser's Answer Brief, Prop. V(C), p. 48-52 argues that the trial court properly rejected the cat's paw doctrine under which Yates caused the wrongful act by manipulating Strickland.

The trial court assumed that Dominguez's evidence "could satisfy the second and third elements of the cat's paw inquiry," SJ Order, p. 24, Appx 489, the court refused to apply the *Staub* cat's paw doctrine, finding "no evidence that Mr. Yates was motivated by retaliatory animus. * * * More fundamentally, Plaintiff has not proffered evidence from which the factfinder could conclude that Mr. Yates *knew* about the protected report." *Id.*, emphasis by the Court.

The supposed lack of 'knowledge' is the basis for Weiser's arguments at Prop. V(C)(i), p. 48-51.

Mr. Dominguez has fully addressed why Yates' own statements– whether considered 'knowledge' or 'belief'– motivated his actions thus satisfying the causation prong of the prima facie case.

The second part of the trial court's holding was that there was no evidence Yates' actions were motivated by retaliatory animus.

As they say in criminal cases, 'motive follows the bullet.' It is hard to

-20-

reconcile lying about Domginuez missing a meeting with any benign motive. In fact, the trial court recognized that Yates' actions reflected hostility, but the trial judge chose to draw the inference that this merely showed "something more benign, like mere dislike." Sum.Judg.Order, p. 27, Appx 492.

The trial judge also stated that Mr. Dominguez's account of Yates' statement–"'we needed to get aligned or it was going to be my job on the line or his job on the line' . . . does not create the link his counsel suggests." SJ Order, p. 26, fn 24.

Mr. Dominguez explained that in the context made, this statement was a threat. Sum.Judg.Answer, PF10, p. 15-16, Appx 187-188. The testimony cited reflected a connection between the investigation and the need to get aligned:

> Q.    You indicated that you were – had a conversation where he [Yates] admitted that he had a problem and treated women better than men?
> A.    Yes.
> Q.    Was that conversation one that occurred within the time period shortly before the interviews?
> A.    Yes.
> Q.    Okay. And in connection with that conversation did he tell you that he knew that he was going to be investigated for that?
> A.    Yes.
> Q.    And was it in the context of that conversation that he indicated you needed to get on board and be aligned with him?
> A.    Yes.

Sum.Judg.Ans, Ex 1 Tr. Domingez, p. 182, ln 2-17, Appx 271 (page and lines cited in Sum.Judg.Answer, PF10 at p. 16, Appx 188).[11]

The context was that Yates said that if they didn't get aligned, one of them was

---

[11]   Dominguez stated that he perceived those comments as a threat, and PF describes them as a threat, however, in candor, that exact quote appears at Ex 1 Tr Dominguez, p. 182, ln 18-22 and was not, therefore, in the lines cited.

-21-

going to lose their job, **and** management would always have his back.  See SJ Order, p. 25-26, Appx 490-91.  And, of course, Yates called Dominguez and yelled at him the evening of June 11 after Yates himself was interviewed.  PF1(D), PF12. Sum.Judg.Ans., p. 11-12, 16, Appx 184-185, 188.

Weiser seeks to defend the trial court's inference by arguing, Ans.Bf., p. 43, that this inference was reasonable because "Dominguez received the 'officer of the month' award and additional responsibilities," *id.*, after his first report.  Weiser says this shows "there was no hostility harbored by *Strickland*." *Id.*, emphasis by counsel. That fact remains that Yates was not there to influence that decision, and there is nothing in the record to shed light on the how, why, or significance of the award vis-a-vis Strickland's preference between the two parties.  In other words, the trial made an inference based on incomplete evidence in favor of Weiser– that was simply improper.

Respectfully, it is not the trial court's role to draw inference favoring the movant.  "[I]in ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'" ***Tolan v. Cotton***, 572 U.S. 650, 651 (2014) (Quoting ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 255 (1986)).

In particular, it was error for the trial judge to attempt to give a benign interpretation based merely on the words in the transcript.  The meaning of a statement cannot be deduced merely from some of the words used.  As noted in ***Ash v. Tyson Foods, Inc.***, 546 U.S. 454, 456 (2006), "[t]he speaker's meaning may depend on various factors including context, inflection, tone of voice. . ." "[O]nly the

[listener] can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985). This "is a kind of 'real evidence' [and] obviously such 'real evidence' cannot be included in affidavits" or transcripts. *Colby v. Klune*, 178 F.2d 872, 873-74 (2d Cir.1949).

It should suffice to say that Yates' demand that Dominguez and he get aligned could reasonably be viewed as a threat against cooperating in the investigation. Likewise, Yates' angry phone call the evening after Dominguez was interviewed could reasonably be viewed as anger over the fact that Dominguez had consented to be interviewed. Further, fabricating an accusation that Dominguez failed to attend Saturday training indicates the kind of mendacity equating to retaliatory animus. Those inferences were (and are) for the jury– not for the trial court– and they supplied sufficient evidence of retaliatory animus to preclude summary judgment.

**WHEREFORE**, the trial court's denial of the cat's paw doctrine in this case was error which should be reversed by this Court.

### III. - CONCLUSION AND RELIEF SOUGHT

This Court should reverse the District Court's Order granting summary judgment in its entirety, reverse the judgment, and remand the case to the District Court for trial on the merits.

### IV. - STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested for the reason that this case presents an important question as to quantum of knowledge a plaintiff must show in support of a retaliation claim. How much and what kind of knowledge is required is an important issue with

-23-

wide application which represents a matter of first impression in this Circuit.

## V. - CERTIFICATE AS TO THE WORD COUNT OF THE BRIEF

Pursuant to Fed.R.App.P. 32(a)(7)(B)(i), this brief contains 6462 words.

**RESPECTFULLY SUBMITTED THIS 11th DAY OF SEPTEMBER, 2025**.

s/Mark Hammons
Mark Hammons, OBA No. 3784
Amber L. Hurst, OBA NO. 21231
HAMMONS, HURST & ASSOCIATES
325 Dean A. McGee
Oklahoma City, Oklahoma  73102
(405) 235-6100 (telephone)
(405) 235-6111(facsimile)
assistant@hammonslaw.com

## CERTIFICATE OF COMPLIANCE

Pursuant to 10TH Cir. R. 32, Appellant hereby certifies that on September 11, 2025, the "Appellant's Reply Brief" is being filed using the court's CM/ECF system which will then send notification of such filing to the following parties listed on the Certificate of Service below. Additionally, Appellant certifies that (a) all required privacy redactions have been made, (b) that the hard copies to be submitted to the court are exact copies of the version submitted electronically and (c) that the electronic submission was scanned for viruses with the most recent version of a commercial virus scanning program, and is free of viruses.

s/Mark Hammons

## CERTIFICATE OF SERVICE

A true copy of the foregoing filed electronically and delivered via ECF to opposing counsel below listed on the 11th day of September, 2025:

Nathan L. Whatley, OBA # 14601
McAfee & Taft PC
Eight Floor Two Leadership Square
211 N. Robinson Ave.
Oklahoma City, OK 73102-7103
Ph:    (405) 235-9621
Fax:   (405) 235-0439
email: nathan.whatley@mcafeetaft.com


                                        s/Mark Hammons